[No. 24308. Department Two. March 6, 1933.]

THE PEOPLES SAVINGS & LOAN ASSOCIATION, *Appellant,* v. D. V. CRAM *et al., Respondents.*[1]

[1]Reported in 19 P. (2d) 667.

118

*J. H. Gordon,* for appellant.

*J. E. Stewart,* for respondents.

BLAKE, J.—The plaintiff brought this action to foreclose a mortgage executed by the defendants Cram and for a deficiency judgment against defendants Batinovich, who were grantees of the mortgaged property under mesne conveyances from the Crams. Judgment was entered foreclosing the mortgage, but not for any deficiency. Plaintiff appeals.

Appellant contends that the respondents Batinovich rendered themselves personally liable for the mortgage debt by reason of the fact that the deed, conveying the property to them, contained the following clause: "The grantee promises and agrees to have all existing mortgages on said lands and premises satisfied of record."

The obligation of a grantee to assume and pay a mortgage debt need not be expressed in any particular language, but it must unequivocally show his undertaking to be answerable for it. *Hopper v. Calhoun,* 52 Kan. 703, 35 Pac. 816, 39 Am. St. 363; *Holcomb v. Thompson,* 50 Kan. 598, 32 Pac. 1091; 41 C. J. 721; 2 Jones on Mortgages (8th ed.), § 933.

In 2 Devlin on Real Estate (3d ed.), § 1067, it is said:

"To render the grantee personally liable to pay a mortgage upon the lands embraced in his deed, it should clearly appear that such was the intention of the parties. A mere statement in the deed that the

conveyance is made subject to such mortgage is not sufficient to fix this liability upon him. To effect this result, the deed should contain some language clearly importing that an obligation is intended to be created by one party, and is knowingly assumed by the other, such as, 'subject to payment of the mortgage,' or that such mortgage 'forms a part of the purchase money, which the grantee in the deed assumes to pay,' or some other equivalent expression. . . . Where the words inserted in the deed, and which it is claimed impose a legal obligation on the grantee to pay the existing encumbrances, are of doubtful meaning or ambiguous, evidence showing the value of the premises, or the agreed consideration therefor, and whether a sufficient, or any, part of the same was retained by the grantee for the purpose of paying the mortgage indebtedness, would be material as aids in the construction thereof.''

And in *Elliott v. Sackett,* 108 U. S. 132, it is said:

''The grantee of an equity of redemption, without words in the grant importing in some form that he assumes the payment of a mortgage, does not bind himself personally to pay the debt. There must be words importing that he will pay the debt, to make him personally liable.''

We think that the language in the deed to Batinovich does not show a clear and unequivocal assumption of the appellant's mortgage.

The meaning of the clause being susceptible of different interpretations, extraneous evidence may be resorted to in order to ascertain the intention of the parties. *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35; *George v. Blumberg,* 211 S. W. (Tex. Civ. App.) 309; *Shumway v. Hawley,* 8 Kan. App. 861, 55 Pac. 352; *Proctor Trust Co. v. Neihart,* 130 Kan. 698, 288 Pac. 574; *Johnson v. Maier,* 187 S. W. (Mo. App.) 143; *First State Bank v. Pearson,* 172 Minn. 366, 215 N. W. 516; 5 Thompson on Real Property, § 4660.

■ The salient facts in the case are not in dispute. Batinovich held a second mortgage on the property. In the fall of 1930, appellant threatened to foreclose its first mortgage. Jacobus, the then owner of the property, was out of the state. Batinovich, prompted by the desire to salvage something from his second mortgage, paid appellant one hundred dollars. In consideration of this payment, appellant postponed foreclosure of its mortgage for the express purpose of giving Batinovich an opportunity to turn the property and thereby realize something on his second mortgage. To that end, Jacobus, whose situation was hopeless, delivered to Batinovich the deed containing the clause in question, upon the representation by the latter that the appellant would release him (Jacobus) from personal liability on the mortgage. It was not a sale. It was not understood by either Jacobus, Batinovich or appellant that Batinovich was to assume appellant's mortgage. On the contrary, the documentary evidence and the testimony all go to show conclusively that Batinovich did not intend to assume or agree to pay appellant's mortgage.

The deed was dated November 1, 1930, being executed after the following letters had passed between Mr. Avey, attorney for Jacobus, and the appellant:

"Elma, Washington, October 27, 1930.
"Peoples Savings & Loan Association,
Tacoma, Washington.
Dear Sirs: Re: Cram-Jacobus, Loan No. 1159.

"I have the quit-claim deed in my possession now, running to your company, but Mr. Batinovich comes in and tells me that the deed should be to him or in blank, as to grantee. I have told him that you are the one I am dealing with. Kindly advise as to this.
"Yours very truly,      E. S. AVEY."

"Mr. Eugene S. Avey,                    October 27, 1930.
Elma, Wash.
Dear Sir:   Re:Loan 1159 Cram-Jacobus
"Supplementing our letter of a few days ago, it will be satisfactory to us if Mr. Jacobus deeds this property in blank or to Mr. Batinovich for the reason that we are willing to have anybody who can possibly make this property work out have a chance at it.

"Mr. Batinovich thinks that by the expenditure of some money he may be able to salvage something above our mortgage. Consequently whatever arrangements you make with him in that respect will be agreeable to us and you may assure your client that as soon as he has given such deed, we will release him from any deficiency we might have. This action has been authorized by our Board and you may rely upon it.

"Yours very truly,
"PEOPLES SAVINGS & LOAN ASSOCIATION.
"By                    Secretary."

On November 17, Batinovich wrote appellant a letter which, among other things, contained the following:

"As I said to Mr. Optgenorth, I would get the tax statements and calculate the total, then if I saw it would be worthwhile to me to assume the indebtedness, I would. But after finding the total sum I have decided that it is too large an amount for me to take over. I would rather forfeit my rights in this property."

This documentary evidence is supported and amplified by the testimony of Jacobus and Batinovich. Their version of the transaction is that appellant was willing to accept a deed to the property and release Jacobus from personal liability if Batinovich would release his mortgage. The manager of appellant admits that to be the case during the period covered by the foregoing correspondence. It was not until the late spring or early summer of 1931 that appellant manifested a different attitude. The change of appellant's position

apparently did not occur until it learned of the clause in the Jacobus deed, which it conceived to be an assumption of the mortgage debt by respondent.

We think that the evidence conclusively shows that Batinovich did not assume or·agree to pay appellant's mortgage.

The judgment is affirmed.

BEALS, C. J., TOLMAN, MAIN, and STEINERT, JJ., concur.

