[No. 25118. Department Two. December 7, 1934.]

WILLIAM D. PERKINS, *Respondent,* v. EDWIN J. BROWN *et al., Defendants,* NETHERLANDS AMERICAN MORTGAGE BANK, *Appellant.*[1]

*Allen, Froude & Hilen,* for appellant.

*Edward H. Chavelle,* for respondent.

STEINERT, J.—This is an action to recover upon a promissory note and to foreclose a real estate mort-

[1]Reported in 38 P. (2d) 253.

gage given as security therefor. Plaintiff obtained a decree of foreclosure, and also a money judgment against the makers of the note and the grantee of the mortgaged property for the full amount thereof, with interest and costs, plus the amount of taxes paid by the mortgagee. The grantee has appealed from the money judgment.

The facts are these: Appellant herein owned a seven-acre tract of land known as the Monitor orchard, together with a warehouse thereon, in Chelan county. Western Cold Storage Company, a corporation having its principal office in Wenatchee, was engaged in the business of packing fruit. William C. Brown was the president of the corporation, and his father, Edwin J. Brown, Sr., and his brother, Edwin J. Brown, Jr., were stockholders therein. The corporation appears to have been under the control of the Browns.

Edwin J. Brown, Jr., and wife were the owners of lots 2 and 3, block 95, Terry's Addition to the city of Seattle, hereinafter referred to as "the Seattle property." On July 26, 1928, Edwin J. Brown, Jr., and wife and Edwin J. Brown, Sr., and wife executed and delivered to respondent their promissory note for eight thousand dollars, due in three years from date thereof, and secured by a mortgage on the Seattle property. It was upon this note and mortgage that this action was brought in November, 1932. We will hereinafter refer to these instruments as the Brown note and the Brown mortgage, respectively.

In the meantime, that is, on March 7, 1929, appellant and Western Cold Storage Company, hereinafter referred to as "the storage company," entered into a written agreement wherein appellant agreed to sell and the storage company agreed to purchase the Monitor orchard and warehouse, upon terms set out

in the contract, the material portions of which read as follows:

"(1)  The purchase price for said property is and shall be the sum of one hundred fifty thousand dollars ($150,000), which shall be payable in the following manner:

"(a)  Second party [the storage company] shall cause to be conveyed to first party [appellant] the following described real property situate in Seattle, . King county, Washington, to-wit:
[the Seattle property]
which is accepted by the first party at the agreed value of sixteen thousand dollars ($16,000), subject to an eight thousand dollar ($8,000) mortgage thereon, which bears interest at 7% per annum, for which mortgage the purchaser herein agrees to reimburse the vendor herein in the following manner:  First, by giving to the vendor herein its eight thousand dollar ($8,000) promissory note with interest at 7% per annum payable on or before January 1, 1930 and endorsed by Dr. Edwin J. Brown and Wm. C. Brown.  . . .

"(b)  The purchaser herein shall cause to be delivered to the vendor forthwith, an assignment of a sixty-seven hundred and fifty dollar ($6,750) purchase money note and mortgage wherein Dr. Edwin J. Brown is the mortgagee and R. H. Maus is the mortgagor, of certain equipment described in said mortgage, which assignment shall be accepted by the vendor herein, as of this date, at an agreed value of five thousand dollars ($5,000),  . . .

"(4)  It is particularly provided, however, that if the payments made to the vendor herein, exclusive of the initial sums mentioned in subdivisions (a), (b) of paragraph 1, at the end of the three years, do not equal the interest on the balance of the purchase price, and the purchaser herein does not make up such deficit on or before March 1, 1932, the vendor may cancel this contract, retain all payments theretofore made,

. . .
"(7)  The vendor herein shall pay before delinquency, all real estate taxes that may have been

levied for the year 1928 but payable in 1929, and that may be levied subsequent to this date, upon the property in King county, Washington, which it is accepting as a part of the purchase price herein as mentioned in subsection (a) of paragraph 1. . . .

"(19) The purchaser herein shall forthwith furnish to the vendor an abstract of title or title insurance at its option, showing merchantable title in Edwin J. Brown and wife, covering the property in King county, Washington mentioned in subdivision (a) of paragraph 1, which title shall be free and clear of encumbrances save and except 1928 taxes. . . .

"(22) Time is of the essence of this contract and in the event the purchaser shall fail to properly and timely care for said premises as mentioned in paragraph 8, or to make the payments as hereinbefore provided . . . then the vendor may at its option declare this contract forfeited and determined, . . . and in the event of such forfeiture, all payments theretofore made by the purchaser herein shall be retained by the vendor, . . ."

Pursuant to this contract, the storage company, on March 7, 1929, executed and delivered to appellant its note for eight thousand dollars, payable January 1, 1930, and endorsed by Edwin J. Brown, Sr., and William C. Brown. This note will hereinafter be referred to as "the storage company note." At about the same time, Edwin J. Brown, Jr., and wife delivered to appellant a statutory warranty deed covering the Seattle property. This deed was dated January 2, 1929, and acknowledged March 6, 1929. Shortly thereafter, appellant conveyed and assigned all its interest in the Monitor ranch and the above contract to defendant Continental Land Co., a corporation, subject to the cold storage company's contractual rights.

Sometime prior to April 25, 1930, Continental Land Co., in an action against the storage company, sought to forfeit the contract. On the date last

mentioned, however, a stipulation was entered into between the parties to that action, whereby certain moneys owing to the storage company from a garnishee in the action were to be applied on the eight-thousand-dollar storage company note which Edwin J. Brown, Sr., and William C. Brown had endorsed. Under the arrangement then perfected, that note was cancelled, and in its place the storage company gave its new note in the sum of $5,610.80, payable on or before July 1, 1932.

When the present action was instituted, appellant here was made a party, on the theory that, by the contract above referred to, it had assumed to pay the Brown mortgage. The defendants Edwin J. Brown, Sr., and wife and Edwin J. Brown, Jr., and wife defaulted in the action, and upon the trial, the court rendered judgment against the two Browns and their wives and also against appellant for the full amount of the Brown note, with interest and costs, including also certain taxes paid, the whole amount aggregating $12,940.54. As appears by the memorandum decision in the case, the trial court held that, *as a matter of law,* the Brown note, herein sued on, had been assumed by appellant, by virtue of the terms of its contract with the storage company, and that therefore, appellant was liable for the deficiency remaining after the sale of the mortgaged property. The one question presented by this appeal relates to the liability of appellant for any deficiency so remaining.

The principal dispute between the parties is with reference to the construction to be given to the word "reimburse" used in paragraph 1(a) of the contract.

We preface our discussion of the question by calling attention to several details already disclosed by our statement of the case. In the first place, this is not a suit between the Browns and appellant. It is a

suit brought by respondent against the Browns *and* appellant. The rights, if any, of the Browns against appellant are, therefore, not involved here. In the next place, it will be observed that, according to the terms of the deed from Edwin J. Brown, Jr., and wife to appellant, the latter did not assume or agree to pay anything, but merely took the Seattle property *subject* to the "existing mortgage for $8,000." In the third place, the contract, on the terms of which respondent relies, did not provide that the purchaser was to "reimburse" the vendor for the *payment* of the mortgage, but only to reimburse it *for* the mortgage.

It will also be observed that the *initial* sums referred to in paragraph 4 of the contract are made up of two items: (1) Sixteen thousand dollars representing the agreed value of the Seattle property, to maintain which amount the note of eight thousand dollars of the storage company was executed and delivered on account of the outstanding Brown mortgage, and (2) five thousand dollars representing the agreed value of the assignment of an equipment mortgage, the face value of which was sixty-seven hundred and fifty dollars; or a total *initial* payment of twenty-one thousand dollars.

It will be further noted that paragraph 19 of the contract calls for the delivery of an abstract of title showing merchantable title in Edwin J. Brown and wife to the Seattle property *free and clear of encumbrances*. And finally, it will be observed that, by paragraph 22 of the contract, time is made of the essence thereof, and that, in the event of forfeiture for nonperformance of its terms, all *payments* theretofore made by the purchaser are to be *retained* by the vendor as and for liquidated damages.

We now come to the vital phase of the case.

When the contract is read in its entirety and in connection with the deed that accompanied it, it becomes apparent, we think, that the word "reimburse" has an equivocal implication. The word itself, considered alone, is rather broad in its signification. According to Funk and Wagnall's Standard Dictionary, it is defined as follows:

"(1) To pay back as an equivalent for what has been abstracted, expended, or lost; refund, repay, as, to reimburse one's expenses;

"(2) To make return of an equivalent to; indemnify."

Similar definitions will be found in *Woerz v. Schumacher*, 161 N. Y. 530, 56 N. E. 72; *Askay v. Maloney*, 92 Ore. 566, 179 Pac. 899; *State ex rel. Sayre v. Moore*, 40 Neb. 854, 59 N. W. 755, 25 L. R. A. 774; 53 C. J. 1181. These definitions connote two ideas: (1) That of indemnifying one for that which he has paid out or lost, and (2) that of supplying one with the equivalent of that which he should have otherwise received.

To appraise the exact significance of the word "reimburse" under its particular setting in the contract, the point of time to which it refers must be considered, and the situation as it immediately presented itself to the parties at the time of the transaction must be kept in mind. If the word is regarded as having a future significance, then it connotes the idea of reimbursement for *payment* of the mortgage at maturity on July 1, 1932. On the other hand, if it be regarded in a present sense, that is, contemporaneously with the transaction between the parties, then it connotes the idea of a present *equivalent* for the outstanding mortgage, to make up the total of the initial sum to be paid by the purchaser under the contract.

The word is susceptible of either construction, and the contentions of the respective parties lead to diametrically opposite conclusions and results. Under respondent's contention, the reimbursement was *for the payment of the mortgage.* Under appellant's contention, the reimbursement was simply the equivalent of a part of the consideration to be paid by respondent; in other words, a part of the down payment of twenty-one thousand dollars, made up of the sixteen-thousand-dollar and the five-thousand-dollar items. To adopt either of these constructions, inferences must be indulged. In fact, the ambiguity of the word, as used, was fully recognized by both parties; and as a result, considerable parol evidence was taken to establish the true interpretation to be given to it.

The rule undoubtedly is that the obligation of a grantee to assume and pay a mortgage debt must be established by evidence that is clear and conclusive, and can not be established by inference. *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892; *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35. While the obligation need not be expressed in any particular language, yet the expression upon which reliance is placed must unequivocally show that the grantee has undertaken to pay the debt. If the language used in a written instrument is susceptible of different interpretations, extraneous evidence may be resorted to in order to ascertain the intention of the parties. *Peoples Savings & Loan Ass'n v. Cram,* 172 Wash. 117, 19 P. (2d) 667.

We are of the view that the language of the deed and contract does not show a clear and unequivocal assumption by appellant of respondent's mortgage, and that the trial court was, therefore, in error in holding, as a matter of law, that it did.

Resorting now to the extraneous evidence for the proper interpretation to be given to the word "reimburse," we are convinced that the judgment against appellant can not be sustained. Had it been intended that appellant was to assume and pay the Brown mortgage, we should naturally expect to find the assumption of such obligation expressed in the deed. But the deed contains no such provision. It merely provides that the real estate therein described was conveyed "subject to the existing mortgage for $8,000."

Our examination of the testimony adduced, as it appears in the record, convinces us that its clear preponderance is against respondent's contention. It is an admitted fact that appellant was averse to taking the property at all if there were any mortgage against it, and that it so expressed itself through its manager during the preliminary negotiations; further, that efforts were made by the Browns to have the mortgage released, but without success.

It is true that William C. Brown testified that the storage company note was given to appellant "to reimburse them for the payment of the mortgage." Mr. Brown, however, was an interested witness. On the other hand, Mr. R. R. Morrison, appellant's manager, testified just as emphatically that he had specifically stated to William C. Brown that the appellant would not assume any mortgage. He further testified that appellant never agreed, nor intended to agree, that the money paid on the storage company note would be used for the payment of the Brown note and mortgage. Mr. Morrison, however, was likewise an interested witness.

Mr. W. R. Prowell was the real estate broker who had brought the parties together. At the time of the trial, he had no interest in the transaction or in the

property, nor did he then have any connection with appellant or its assignee. He testified that the storage company note was given as a part of, and to make up, the total initial, or down, payment of twenty-one thousand dollars, and that it was clearly understood that appellant was not to assume any mortgage.

The attorney who drew the contract testified, upon direct examination, that it was he who had supplied the word "reimburse" therein. He also testified that the parties had held a conference in his presence with reference to the contract, previous to its execution, and that the matter of the assumption of the mortgage was discussed among them. Though some of the material portions of his direct testimony were striken by the court, he further testified on cross-examination that the storage company note was given, not to pay off the Brown note and mortgage, but to make up the full initial payment on the contract.

The testimony of these four witnesses furnished all the evidence, aside from that which was documentary, touching the particular matter. As we have already stated, the evidence as a whole, in our opinion, clearly preponderates in favor of appellant's contention. Certain it is, in any event, that the evidence is not clear and conclusive to the effect that appellant assumed and agreed to pay the mortgage. Where a covenant to assume and pay a lien or encumbrance is doubtful, the doubt must be resolved in favor of the vendee in the deed, and a recovery against him will be denied. *Ordway v. Downey,* 18 Wash. 412, 51 Pac. 1047, 52 Pac. 228, 63 Am. St. 892; *Chaffee v. Hawkins,* 89 Wash. 130, 154 Pac. 143, 157 Pac. 35.

Respondent makes a further contention to the effect that the intention to assume the mortgage was evidenced by the fact that appellant's assignee subsequently attempted to get an extension of the time

for payment. In the first place, such attempt was not made by this appellant, but by one to whom it conveyed title to the property. In the next place, the application for an extension of time for payment does not, of itself, conclusively show assumption of the debt. *Buchanan v. Schubach,* 106 Wash. 399, 180 Pac. 407, 185 Pac. 583. The governing rule in establishing liability for an assumption of a debt is that the proof must be clear and convincing.

Respondent not having met the burden placed upon him to show by clear and conclusive evidence that appellant agreed to assume and pay the mortgage, the judgment against appellant, in so far as it directs a money judgment against it, must be, and is, reversed.

BEALS, C. J., MITCHELL, HOLCOMB, and BLAKE, JJ., concur.