[No. 37220. Department Two. April 22, 1965.]

LANDON R. ESTEP, *Respondent*, v. KING COUNTY *et al., Appellants.**

*Reported in 401 P.2d 332.

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for appellants.

*Clodfelter & Dempcy,* for respondent.

WEAVER, J.—The sole asset of Molehill, Inc., a Washington corporation, was a vendee's interest in a contract to purchase certain real property owned by Mr. and Mrs. William E. Russell.

The secretary and counsel of Molehill, Inc. testified that the corporation refused the offer of H. R. Watchie to purchase its interest in the Russell contract because of the possibility that *both* the corporation and stockholders, upon distribution, would be subject to federal income tax on capital gains. We do not ascribe a sinister motive to the Molehill stockholders in their attempt possibly to minimize their federal income taxes, for, as Mr. Justice Sutherland said in *Gregory v. Helvering,* 293 U.S. 465, 469, 79 L. Ed. 596, 55 Sup. Ct. 266, 97 A.L.R. 1355 (1935):

> The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted. [Citing authorities.]

April 24, 1961, the stockholders of Molehill, Inc. contracted to sell, and did sell, all of their stock in the corporation to H. R. Watchie or his nominee. Mr. Watchie had organized and represented a limited partnership known as Cougar Mountain Associates. The purchase price of the stock was payable in installments over a number of years.

July 14, 1961, Cougar Mountain Associates, as owners of all the capital stock, voted to dissolve Molehill, Inc. and elected Mr. Watchie as statutory liquidating trustee. When, as trustee in dissolution, he presented a quitclaim deed and assignment of real estate contract dated July 14, 1961, for

recording, King County demanded payment of the 1 per cent real estate excise tax authorized by statute (RCW 28.45)[1] and imposed by county ordinance.[2] The tax was assessed and paid under protest on the basis of 1 per cent of (a) the cash to be paid over a period of years by Cougar Mountain Associates to the *shareholders* of Molehill, Inc. and (b) the unpaid balance on the Russell contract. Cougar Mountain Associates accepted the assignment of the vendee's interest in the real estate contract but did not assume or agree to pay the unpaid balance.

Plaintiff, as assignee of Molehill, Inc., commenced this action to recover the tax paid. The county appeals from a $6,936.42 judgment against it.

The facts of the instant case as found by the trial court cannot be distinguished from the fact patterns of *Deer Park Pine Industry, Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955), and *The Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961). See also *Christensen v. Skagit Cy., post* p. 95, 401 P.2d 335 (1965).

In *Deer Park, supra,* we answered the question "Is the distribution of real property to stockholders, by the statutory-liquidating trustee of a corporation in dissolution, subject to the one per cent tax on real estate sales" in the

---

[1] RCW 28.45.050.

"The county commissioners of any county are authorized . . . to levy an excise tax upon sales of real estate not exceeding one percent of the selling price."

RCW 28.45.010.

"As used in this chapter, the term 'sale' shall have its ordinary meaning and shall include any conveyance . . . or transfer of the ownership of or title to real property . . . for a valuable consideration, . . . ."

RCW 28.45.030.

"As used in this chapter, the term 'selling price' means the consideration, including money or anything of value, paid or delivered or contracted to be paid or delivered in return for the transfer of the real property . . . and shall include the amount of any lien, mortgage, . . . or other incumbrance, . . . remaining unpaid on such property at the time of sale."

[2] We find no material difference in the wording of RCW 28.45 and King County Code, Chapter 7.04.

negative. The rationale of *Deer Park, supra,* was affirmed in *Doric, supra.* The court said: "We are not willing to depart from this reasoning [of *Deer Park*]."

Defendants do not ask that we overrule *Doric* and *Deer Park* but seek to distinguish and circumvent them, contending that they were presented to this court upon short and inadequate agreed statements of fact which did not include "the whole ball of wax"; that the records disclosed only the final transfers by the liquidating trustees (which were held nontaxable); and that the records did not include the facts, purposes, and motives of prior transactions by which stock ownership was acquired.

In the instant case, defendants assign error to the court's failure to recognize and consider two instruments as one transaction: (a) the contract agreement of April 24, 1961, between the *stockholders* of Molehill, Inc. and Mr. Watchie and (b) the quitclaim deed and assignment of real estate contract of July 14, 1961, from Mr. Watchie, the *corporate* liquidating trustee, to Cougar Mountain Associates. If these transactions were considered as one package, defendants contend they constitute a sale subject to the real estate excise tax.

Defendants' sole argument on appeal is based upon the Kimbell-Diamond rule[3]—an argument not advanced on appeal in either *Deer Park* or *Doric.* The rule is explained in *United States v. Mattison,* 273 F.2d 13, (9th Cir. 1959), 83 A.L.R.2d 706, in which the court said:

> when a taxpayer who is interested primarily in a corporation's assets first purchases the stock and then liquidates the corporation in order to acquire the desired assets, the separate steps taken to accomplish the primary objective will be treated as a single transaction. Thus, even though the objective was accomplished in form by a purchase of stock, the substance of the transaction is a purchase of property.

In general, the object of the Kimbell-Diamond rule is to fix the *cost basis* of property which has been acquired

---

[3]See Annotation 83 A.L.R.2d 718, "Income Tax: corporate assets as received in liquidation or by purchase where stock is purchased to acquire assets" by M. L. Cross.

by a taxpayer as a result of a corporate liquidation. The cost basis determines the taxpayer's possible federal income tax liability. The Kimbell-Diamond rule is applied in the field of federal income taxation, and presents problems which are not for our consideration.

■ We do not deem the Kimbell-Diamond rule applicable to an interpretation of the real estate excise tax statutes. (See footnote 1.) Adoption of the rule would write into Washington law a provision not voiced by the legislature and would make suspect every conveyance of real property by a corporate liquidating trustee. It would involve the county and the courts in a search for subjective intents, motives, and purposes every time a transfer of stock is followed by a transfer of real property in corporate dissolution. Any change in the application of the statutes and ordinance must be legislative.

Upon the authority of *Deer Park* and *Doric,* the judgment must be affirmed. It is so ordered.

ROSELLINI, C. J., OTT and HAMILTON, JJ., concur.

FINLEY, J. (dissenting)—I believe that the one per cent county real estate tax should be imposed upon the dissolution of a corporation where the incorporator has sold his stock to another party who receives land upon the dissolution of the corporation. When these facts occur there has been a "sale" of land within the "ordinary meaning" of that term for a "valuable consideration" under RCW 28.45.010. I do not think that complicated corporation principles should be used to define a "sale" when the statute requires that the term "sale" shall have its "ordinary meaning."

The rejection of the *Kimbell-Diamond* rule misses the thrust of the county's argument. Of course the rule does not strictly apply to a state situation. It is offered only as an analogy. When the court defines the term "sale," it should not close its eyes to reality. There most assuredly has been a "sale" of real property in this case.

I find little merit to the majority's argument that "Adoption of the rule would write into Washington law a provision not voiced by the legislature and would make suspect

every conveyance of real property by a corporate liquidating trustee." There is no more "writing of law" in the adoption of a realistic approach than there is in holding that there is no "sale" upon dissolution, *Deer Park Pine Industry, Inc. v. Stevens Cy.,* 46 Wn.2d 852, 286 P.2d 98 (1955), and holding that there is a "sale" when land is transferred to a corporation during incorporation. See *Christensen v. Skagit Cy. post* p. 95, 401 P.2d 335 (1965), and dissent filed therein.

Furthermore, I see nothing wrong with placing conveyances by liquidating trustees under surveillance by county tax authorities. There has probably been a sale of stock at some time, and thus a sale of the land which should be taxed. The county should assume that there has been a sale of land until the grantee shows that he was the incorporator, thus showing that the real property originally belonged to him. In this manner, there will be a tax on "sales," and in those cases where there was no transfer of ownership to a third party the burden of proof is placed on the party who can easily negate the assumed sale. For a further elaboration of these points see the dissent in *Christensen v. Skagit Cy., supra.*

May 28, 1965. Petition for rehearing denied.