[No. 37293. Department Two. April 22, 1965.]

Leslie C. Christensen, *Appellant*, v. Skagit County *et al.*, *Respondents.*

*Bannister, Bruhn & Luvera*, by *Harwood Bannister*, for appellant.

*Harry A. Follman*, for respondents.

Weaver, J.—Defendants' motion for summary judgment having been granted, plaintiff appeals from a judgment dismissing his action with prejudice.

Plaintiff and his partners owned three supermarkets in different localities. Desiring to do business in corporate form, they organized three corporations and transferred to the respective corporations all partnership assets including real property, one parcel of which was mortgaged.

In each instance the partners were the only incorporators and the only ones to whom stock was issued. The only assets received by the respective corporations were those transferred from the partnerships in return for which the corporate stock was issued.

To record the deeds conveying the real property to each

*Reported in 401 P.2d 335.

of the corporations the partners paid, under protest, to the treasurer of Skagit County an excise tax computed at the rate of 1 per cent of the value of the real property transferred.

The only question presented on appeal is whether the state-authorized (RCW 28.45), county-imposed (Skagit County ordinance No. 3005) 1 per cent excise tax applies to conveyances of real property by members of a partnership to a corporation in return for the issuance of corporate stock.

We conclude, as did the trial court, that the transaction is taxable; hence, the judgment of dismissal must be affirmed.

 The tax, authorized by statute and levied by county ordinance, is levied upon each sale of real property located within the county. RCW 28.45.060. The term "sale" as used in RCW 28.45.050 is defined in RCW 28.45.010:

> As used in this chapter, the term "sale" shall have its ordinary meaning and shall include any conveyance, grant, assignment, quitclaim, or transfer of the ownership of or title to real property, including standing timber, or any estate or interest therein for a valuable consideration, . . . .

The major problem is whether the transfer of the ownership of real property from members of the partnership to the corporation in exchange for stock in the corporation constitutes a "sale" within the meaning of the term as defined in RCW 28.45.010, *supra.*

In *Deer Park Pine Industry, Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955), this court held the conveyance was not taxable where a change of title to real property was effected solely as a result of its distribution to stockholders of a solvent corporation in the process of dissolution, except in a case where the stockholders assumed the liabilities of the liquidating corporation; and in such event, the real estate excise tax is applicable to the extent of the corporate liabilities assumed by the stockholders. The rationale of *Deer Park* was affirmed and applied in *The Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961).

With *Deer Park* and *Doric* as a board, plaintiff springs

to the syllogistic conclusion that the transactions of the instant case are nontaxable because the present transactions are the converse of the situation in which corporate stock is surrendered in liquidation in exchange for a conveyance of the real property of the corporation to the shareholders.

Even though it might be said that the transfer of real property to a corporation in return for stock is at the opposite end of the spectrum from a transfer of real property by a liquidating trustee to the shareholders, there the analogy ends. Each transaction is based upon a different legal theory.

In *Deer Park* and *Doric* we pointed out, *inter alia,* that the ownership of corporate stock carries with it the inherent right to share in the assets of a corporation—after creditors —when it is in the process of liquidation; hence a transfer by a liquidating trustee was not a "sale" in the ordinary meaning of the term, or a transfer of title for a valuable consideration within the ambit of RCW 28.45.050, *supra.*

It is not necessary for us to discuss the various rights arising from individual or partnership ownership of real property as provided in RCW 25.04.100, 240, 250. It is sufficient for our purpose to note that following the transfer of the real property to the corporation, and receipt of shares of stock in exchange, the individual partner has none of his previous rights in the real property. They have been surrendered in return for his rights to participate as a stockholder in the management of the corporation. An individual shareholder has no property interest in physical assets of the corporation. *California v. Tax Comm'n,* 55 Wn.2d 155, 346 P.2d 1006 (1959). The corporations are separate organizations, each with its distinctive privileges and liabilities different from those enjoyed by plaintiff and his partners prior to incorporation. *State v. Northwest Magnesite Co.* 28 Wn.2d 1, 41, 182 P.2d 643 (1947). Thus we fail to find merit in plaintiff's argument that "the incorporators are no more than taking it out of one pocket and putting it in another."

Plaintiff and his partners received a valuable consideration in return for this partnership real property—the right to do business in corporate form.

We conclude that the transactions in question constituted transfers of ownership for a valuable consideration and were "sales" within the ordinary meaning of the statute.

Finally, plaintiff urges that the tax on the transfer of the property upon which there is a mortgage should be limited to 1 per cent of the amount of the mortgage indebtedness against the property. Skagit County ordinance No. 3005, as authorized by RCW 28.45.050, levies the excise tax against the "selling price." RCW 28.45.030 requires that " 'selling price' means the consideration . . . paid . . . and shall include the amount of any lien, *mortgage* . . . or other incumbrance . . . remaining unpaid on such property at the time of sale." (Italics ours.) Defendants followed the mandate of the statute.

The judgment is affirmed.

OTT and HAMILTON, JJ., and FOLEY, J. Pro Tem., concur.

FINLEY, J. (dissenting)—We are here asked to construe the applicability of the 1 per cent county real estate tax to a transfer of real property from a partnership to a corporation which is wholly owned by the former partners. Authority for imposition of this county excise tax must be found in RCW 28.45. The crucial language respecting case disposition involves the definition of a "sale," and this definition is identical in RCW 28.45.010 and the Skagit County ordinance, namely:

> As used in this chapter, the term "sale" shall have its ordinary meaning and shall include any conveyance, grant, assignment, quitclaim, or transfer of the ownership of or title to real property, including standing timber, or any estate or interest therein for a valuable consideration, . . . .

It should be noted that the statute reads: "the term 'sale' shall have its ordinary meaning." The critical words, (a) "sale" and (b) "transfer of the ownership . . . for a valuable consideration," now have the color of *Deer Park Pine Industry, Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d

98 (1955), and *The Doric Co. v. King Cy.* 57 Wn.2d 640, 358 P.2d 972 (1961), significantly stamped on them. Those opinions, in which the court refused to look behind the corporate mechanisms, held that the exchange of real property owned by the corporation for the return of the corporate stock upon dissolution was not a "sale."

Now the majority rules that there is a "sale" when partners decide to incorporate, and in the process they change the paper title of real property from the partnership to the corporation. When the process is all over, and the mystery revealed, the partners still "own" the real property—no third party has entered the picture save the fictional player, the corporation. In my view, this transaction fails to rise to the level of a "sale," under the "ordinary meaning" of that term.

Nor am I impressed with the majority's argument that there has been a statutory "transfer of the ownership of or title to real property . . . for a valuable consideration" in this shuffle of rights and duties. Ownership has really not been transferred. Further, there has been no receipt of a *"valuable* consideration." While there may be advantages to corporate form, the real value in this transaction springs from the capital assets— *i.e.,* the super markets. Thus the very stock said to be the *"valuable* consideration" is worthless without the real property. Aside from involvement in the web of rules designed to regulate and govern the areas of corporation and contract law, I am at a loss to distinguish this case from the *Deer Park* and the *Doric* cases. As one writer commented:

> It was decided in *Deer Park* that when a corporation is dissolved, the termination of the rights incident to the ownership of stock was not "consideration" for the right to direct ownership of the asset by distribution. . . . The court may well determine, based upon this that the reverse procedure should be treated in the same fashion: that is, that the termination of direct ownership in an asset is not "consideration" for the rights incident to the ownership of stock received by the individual, and thus that no taxable "sale" occurred. Note, 37 Wash. L. Rev. 219, 225 n. 30 (1962).

Without further elaboration of needless and perhaps tedious parry and thrust in the law of contracts and corporations, let me repeat that I find the difference between the formation of a corporation and its dissolution of little help in deciding the application of this tax.

Proper decision of the issue of "what is a 'sale' in its 'ordinary meaning' " requires a realization of certain existing problems in the application of the tax to the circumstances of the state of Washington. It is of course noteworthy and obvious that real property transfers are important to the lumber, farming, and construction industries.

As the law now stands, a sizeable loophole exists when a person buys the stock of an existing corporation and then dissolves the corporation to obtain the land. This is presented in the following diagram:

Here, A, owning the stock of X Corporation, sells his stock to B, who then dissolves the corporation. In reality, there has been a sale of real property, clearly within RCW 28.45-.010. However, *Deer Park, Doric,* and now *Estep v. King Cy., ante* p. 76, 401 P.2d 332 (1965), hold that there is no taxable sale. Those cases seem unable to see the forest because of the trees; *i.e.,* the sale because of the manipulations.

The effect of the present case may be quickly demonstrated by another diagram:

The majority holds that there is a "sale" when A incorporates and allows the corporation to hold title to the land. This is certainly not a "sale" within the "ordinary meaning" of that term. There is no third party involved; yet there is a tax. The inequity of the majority construction is highlighted when the dissolution of the corporation is contemplated. If A still owns the stock, then he has paid a tax, not so much because of a basic change in ownership and control of the land, but just to use the device of incorporation.

Further problems are presented if we look at the whole possibility presented by these manipulations represented in the following diagram:

Here A forms the corporation and, under the majority opinion, since there has been a "sale," A will pay a tax on the change in ownership form. Then A sells his stock to

B, who dissolves the corporation to get the property, and this transaction, the first real "sale," is ignored.

Now it is true that if we here held there is no "sale" on incorporation a tax dodge could result. Thus, A, owning very valuable land, would incorporate and then sell his stock to B, who would dissolve the corporation, thereby avoiding any county real estate tax on the transfer of the land.

However, this loophole may be of minimal importance, and it is possible that this exception has been purposely left on the books by the legislature. *Deer Park* was handed down in 1955, and the legislature has done nothing to the statute to correct the obvious logical conclusion that if there is no "sale" upon dissolution there is no "sale" upon incorporation. It is noteworthy that the Washington state sales tax is not assessed on a transfer of capital assets by an individual or a partnership to a corporation in exchange for the stock of the corporation, nor upon the exchange of assets and stock upon dissolution. Washington State Tax Commission Rules 106 (1964).

The ideal solution to this problem seems elusive. A partial solution would be to impose the tax upon dissolution only if the stock has changed hands. This runs slightly counter to *Deer Park* and *Doric*, as it would require recognition of the actualities of the situation. This recognition of actual "sales" does not increase the difficulties of administration and collection of the tax. The county officials should merely assume that there has been a sale when a liquidating trustee files a conveyance of real property. If there has never been a transfer of the stock of the corporation, then the grantee (who obviously originally incorporated the corporation) can quickly and easily negate the assumed sale. This plan has the merit of imposing the tax only when there has been at least one sale of real property.

It should be recognized that even this solution does not overcome the present loophole which allows multiple transfers of stock before dissolution without any taxation. Thus, a corporation largely made up of timber land can be readily sold and resold without taxation at the county level. This loophole may be impossible to cure under any solution.

Perhaps the only solution to these problems will come from the legislature. Such action is a remote possibility, but this dissent highlights and may focus legislative attention upon the problem.

June 9, 1965. Petition for rehearing denied.