[No. 38534.    En Banc.    February 15, 1968.]

WILLIAM H. WEAVER *et al., Respondents,* v. KING COUNTY *et al., Appellants.*[*]

*Charles O. Carroll, James E. Kennedy,* and *William L. Paul, Jr.,* for appellants.

*Kahin, Horswill, Keller, Rohrback, Waldo & Moren* and *Harold Fardal,* for respondents.

[*]Reported in 437 P.2d 698.

WEAVER, J.—The principal question of law on appeal was first presented to this court 12 years ago in *Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955).

The *rationale* of *Deer Park* is this:

■ The right of a stockholder to receive corporate assets in kind in the voluntary dissolution of a solvent corporation is an incident of corporate stock ownership, the right following ownership of the stock. The conveyance of corporate real property as a liquidating dividend to a distributee-stockholder by the liquidating trustee of a solvent corporation in dissolution is *not* a "conveyance, grant . . . or transfer . . . for a valuable consideration, . . ." or a "sale" in the ordinary sense, within the meaning of RCW 28.45.010, and thus subject to the 1 per cent real estate transfer tax authorized by statute, if implemented by an appropriate county ordinance.

This is the fifth time the same question has been presented to this court.[1] We have held uniformly that the transfer is not a taxable event.

We turn to the facts of the instant case.

Prior to July 13, 1960, plaintiffs-respondents owned all of the capital stock of three corporations, Metropolitan Laundry Company, Aurora Launderers and Cleaners Corporation, and Crescent Laundry and Cleaning Company. The assets of each corporation consisted of good will, accounts receivable, supplies, other personal property, and laundry and dry cleaning plants. Ownership of real property was incidental to the conduct of these businesses.

---

[1] *Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955); *Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961); *Estep v. King Cy.*, 66 Wn.2d 76, 401 P.2d 332 (1965); *Ban-Mac, Inc. v. King Cy.*, 69 Wn.2d 49, 416 P.2d 694 (1966).

It is significant that the legislature has met six times since the rule of *Deer Park, supra*, was announced. It has not changed the rule by statute.

King County's constant appeals upon the same question are in the nature of ingeminated petitions for rehearing; or are made, perhaps, with the hope that changes of membership of the court may eventually change the rule.

July 13, 1960, plaintiffs agreed to sell to Pantorium Launderers and Cleaners, Inc. (hereafter called Pantorium) all of their capital stock in the three corporations for about one million dollars. At that time, the real property owned by Metropolitan had an agreed market value of $400,000. It was encumbered by a mortgage to Carroll Mortgage Company on which approximately $46,000 remained unpaid. By this transaction, Pantorium became the owner of Metropolitan's corporate stock.

January 2, 1961, Pantorium voted to dissolve Metropolitan. Eleven months later, the liquidating trustee of Metropolitan delivered to Pantorium a statutory warranty deed conveying Metropolitan's real estate "subject to" the Carroll mortgage. The deed recited no consideration for the transfer but stated that its purpose was "to effect a transfer of the property to said Grantee as a liquidating dividend in the process of distributing the assets of the Metropolitan Laundry Co. (now in process of voluntary dissolution)."

As a condition of recording the deed, the treasurer of King County demanded from Metropolitan the payment of 1 per cent excise tax on a valuation of $400,000. The tax was paid under protest, and this action was commenced by plaintiffs, as the assignees of Metropolitan, for its recovery. Defendant county appeals from a judgment in favor of plaintiffs entered after the court granted a motion for summary judgment.

It is argued that there may be a controlling factual difference between a "one-step" transaction (illustrated by *Deer Park, supra,* and *Doric Co. v. King Cy.,* 57 Wn.2d 640, 358 P.2d 972 (1961), because there had not been a *recent* sale of the corporate stock prior to dissolution), and a "two-step" transaction (illustrated by *Estep v. King Cy.,* 66 Wn.2d 76, 401 P.2d 332 (1965), wherein voluntary dissolution was effected by transfer of the real property *shortly after* the distributee-stockholder had purchased the stock). This is a distinction without a difference, and, as stated in *Estep, supra,* it would make a distinction that

would write into Washington law a provision not voiced by the legislature and would make suspect every convey-

ance of real property by a corporate liquidating trustee. It would involve the county and the courts in a search for subjective intents, motives, and purposes every time a transfer of stock is followed by a transfer of real property in corporate dissolution. Any change in the application of the statutes and ordinance must be legislative.

In each of the four appeals involving the instant question, King County has shifted the emphasis of its argument to a slightly different factual pattern, but, as this court pointed out in *Ban-Mac, Inc. v. King Cy.*, 69 Wn.2d 49, 416 P.2d 694 (1966):

> In each of these cases, the factual pattern has varied to some extent. In King County's present appeal, there is a further slight variance in the fact pattern, but we feel that if several pages of this opinion were used in detailing and discussing the facts, we would still have to be faced with the application of the rule of law to which we have adhered for the past 11 years.

The property was distributed to Pantorium "subject to" the 1956 Carroll mortgage with an unpaid balance of approximately $46,000. The mortgage provided:

> The mortgagors consent to a personal deficiency judgment for any part of the debt hereby secured which shall not be paid by a sale of said property.
>
> The covenants and agreements herein are joint and several, and binding upon our, and each of our, successors in interest, . . . .

The county argues that the above provision of the mortgage binds Pantorium to "assume" the mortgage and thus furnishes a consideration for a taxable transaction at least to the extent of the mortgage, and that such a tax was paid in *Deer Park, supra.*

■ We do not agree with the county's contention. The grantee of a deed is not bound by the mortgagor's covenant binding himself and his successors to pay the mortgage debt, even though the mortgage declares that the covenant runs with the land, unless the grantee has, in some way other than by mere acceptance of the deed, assumed the mortgage indebtedness.

The court said in *Perkins v. Brown*, 179 Wash. 597, 38 P.2d 253, 101 A.L.R. 275 (1934):

> The rule undoubtedly is that the obligation of a grantee to assume and pay a mortgage debt must be established by evidence that is clear and conclusive, and can not be established by inference. . . . While the obligation need not be expressed in any particular language, yet the expression upon which reliance is placed must unequivocally show that the grantee has undertaken to pay the debt.

The evidence fails to establish that Pantorium undertook to pay the Carroll mortgage and agreed to a deficiency judgment in the event of foreclosure, either expressly or by implication.

Finally, it is urged that *Christensen v. Skagit Cy.*, 66 Wn.2d 95, 401 P.2d 335 (1965), casts some doubt upon the rationale of *Deer Park*. In *Christensen*, real property was conveyed to a corporation in return for the issuance of corporate stock. We held the transfer of the land to the corporation in return for the corporate stock to be a sale within the ambit of RCW 28.45.050 and hence taxable. The transaction is the exact reverse of the instant case and is based upon different legal theories which are discussed in *Deer Park*, and *Christensen, supra*.

The judgment is affirmed.

HILL, HUNTER, HAMILTON, and NEILL, JJ., concur.

HALE, J. (dissenting)—Conceding that the majority opinion rests on precedent, but being in disagreement with its rationale, I feel obliged to point out that this is the first time the whole court has considered the problem. *Deer Park Pine Indus., Inc. v. Stevens Cy.*, 46 Wn.2d 852, 286 P.2d 98 (1955), the first in a line of cases interpreting the statute in issue, and subsequent cases, *Doric Co. v. King Cy.*, 57 Wn.2d 640, 358 P.2d 972 (1961); *Estep v. King Cy.*, 66 Wn.2d 76, 401 P.2d 332 (1965); and *Ban-Mac, Inc. v. King Cy.*, 69 Wn.2d 49, 416 P.2d 694 (1966), were all departmental opinions.

*Christensen v. Skagit Cy.*, 66 Wn.2d 95, 401 P.2d 335

(1965), however, involved the same statute and a similar transaction, but, in my opinion, departed from the rationale of the earlier cases and thus cast some doubt on *Deer Park* and its successors. But *Christensen,* too, lacks in decisive authority because it also was a departmental decision. In my mind, however, the rationale of *Christensen* comes closer to carrying out the intention of the legislature than do the other cases.

The issues, as I see them, are quite simple. Did Metropolitan sell real estate to Pantorium? Did it effect a transfer or conveyance for a valuable consideration? If the transfers are for a valuable consideration, they are taxable sales under the pertinent statutes.

Did Metropolitan sell and convey $400,000 worth of real estate to Pantorium? Respondents William and John Weaver owned all of the capital stock of three corporations, Metropolitan Laundry Company, Aurora Launderers and Cleaners Corporation and Crescent Laundry and Cleaning Company. Respondents sold all of their capital stock in these three corporations to Pantorium Launderers and Cleaners, Inc., for one million dollars. Metropolitan Laundry Company owned the real estate in issue which the parties agree had a market value of $400,000. Pantorium, now the owner of all of the capital stock of Metropolitan voted to dissolve Metropolitan and had liquidating trustees appointed to execute the dissolution. It was the delivery of a statutory warranty deed from the liquidating trustee, conveying all of Metropolitan's real estate to Pantorium which the county says was a taxable conveyance. I think so too.

We start the transaction with Metropolitan owning $400,000 worth of real estate and wind up with Pantorium owning it. Somehow or other the real estate was conveyed or transferred to Pantorium. I see no way, therefore, that this would be held other than a conveyance, grant, assignment or transfer of the ownership or title to real property for a valuable consideration, exactly as described in the following statute:

The real estate sales tax provided for herein shall be

levied upon each sale of real property located within the county. RCW 28.45.060.

The term "sale" is defined in RCW 28.45.010 as follows:

As used in this chapter, the term "sale" shall have its ordinary meaning and *shall include any conveyance, grant, assignment, quitclaim, or transfer of the ownership of or title to real property* . . . *or any estate or interest therein for a valuable consideration* . . . . (Italics mine.)

The case authority on which the majority appears to rely rests on the idea that a transfer of real-estate title from one entity to another by use of a conduit or intermediary, such as a trustee or escrow holder, either through a merger, consolidation, absorption, or acquisition of the grantor entity by or with the grantee, and a consequent dissolution of the grantor, all somehow constitutes a transfer without consideration and, hence, not a sale within RCW 28.45.010, *supra,* imposing a 1 per cent excise on all real-estate sales.

But, transfer of real estate from a dissolved corporation to its stockholders, or from a dissolved corporation to another which has acquired its capital stock, or from partners to a corporation in which the grantor will own the capital stock, or from a corporation merging or consolidating with or acquiring another, all, from their very nature, appear to me abundantly supported by consideration and should be held taxable as sales of real estate unless made by gift, devise, foreclosure, or through other exempted transactions.

The benefits and corresponding detriments, the actions and expenses involved in dissolution of a corporation, or the creation of another, are so numerous and varied that they or the mere mutual promises to do any of these constitute a valuable consideration. Thus, I think that the series of decisions beginning with *Deer Park Pine Indus., Inc. v. Stevens Cy., supra,* followed by *Doric Co. v. King Cy., supra; Estep v. King Cy., supra;* and *Ban-Mac., Inc. v. King Cy., supra,* in denying taxability for want of consideration on transfers of this kind has overlooked the most fundamental nature of consideration—a benefit on the one side

and a detriment on the other, or mutual benefits or mutual detriments. I do not see how a promise to create or dissolve a corporation or merge or consolidate two or more corporations is not a promise to confer a benefit or incur a detriment so as to support an agreement. How, then, can it be said that the performance of the promise, the doing of the promised act, is less than the promising of it? To hold the creation or dissolution of a corporation or the merger or consolidation of two or more corporations, or the acquisition of one corporation by another through control or ownership of the common stock are transactions without consideration, to me does violence to the doctrine of consideration.

Where there is either a detriment on the one hand or a benefit on the other, or mutual benefits, or correlatively a benefit and a detriment together, the benefits and the detriments singly or both together constitute a consideration legally sufficient to support a promise. If the consideration is sufficient to cement the agreement, the courts are not concerned with its adequacy, for the courts do not measure the comparative value of the promises or the acts exchanged. The weighing of the quid pro quo is left to the parties to the transaction. Where there is sufficient consideration to support the agreement, it is binding upon the parties thereto and inevitably must be treated as a valuable consideration. *Browning v. Johnson,* 70 Wn.2d 145, 422 P.2d 314 (1967).

Therefore, I see no difference in principle as far as the doctrine of consideration is concerned between conveyances to or from newly organized corporations and conveyances from a dissolving one, and, of course, the same applies to mergers, consolidations and acquisitions of one corporation with or by another. There exists little distinction as far as consideration is concerned between conveyances to a corporation on its formation or from the corporation on its dissolution.

Aside from the doctrine of consideration, it would seem that the transfer of real-estate ownership from individuals to a corporation, or from a corporation on dissolution to its

shareholders, or from one corporation to another on a merger or consolidation of one with the other, or any transaction by which one legal entity acquires it from another, are taxable sales under the statute, for, as I see it, the legislature, in defining taxable sales, employed the very language essential to make such transactions taxable.

The legislature, in this statute (RCW 28.45.010), has expressly enlarged the ordinary meaning of a sale—that is, one where a buyer purchases from a seller for money or property—to specifically include every kind of grant, conveyance, or transfer of ownership for any valuable consideration. Alongside this extremely broad definition, lest there be any mistake as to its all-inclusive purpose, the statute sets forth in a subsequent paragraph specific exemptions, thus carving out from the broad definition of taxable sales such transfers as are accomplished by gift, devise, inheritance, forfeitures of conditional sales, deeds in lieu of foreclosure and partitions among tenants in common by agreement or court decree and divorce, etc.

The taxing section, therefore, under familiar rules of statutory construction, should be given a liberal construction and the exemption a narrow one for exemptions in a tax statute must be strictly construed in favor of the tax (*Unemployment Compensation Dep't v. Hunt,* 17 Wn.2d 228, 135 P.2d 89 (1943)), whereas one who claims the exemption has the burden of demonstrating that his transaction falls within it. *In re St. Paul & Tacoma Lumber Co.,* 7 Wn.2d 580, 110 P.2d 877 (1941). This is but another way of saying that the taxing section requires a liberal construction in favor of the tax and the exemptions, defeating the tax, a narrow one unless the act itself specifies differently. Therefore, the county is entitled to a broad definition of consideration—although I do not think it is needed here—and the taxpayer has the burden of showing want of consideration. When one lays the exempt transactions alongside the included transactions, I think no alternative remains in construing the statute but to place the instant transfer within the definition of sale.

Further, that the legislature had in mind all kinds of

transfers of real estate even though involving no direct exchange of money or property may be seen in the provision of RCW 28.45.035 which authorizes the assessor to have an appraisal made, based on full market value, when the selling price is neither ascertainable at sale nor separately stated.

Accordingly, I am of the opinion that the conveyances of land from the liquidating trustee of Metropolitan to Pantorium, the acquiring corporation, are clearly taxable under the rationale of *Christensen v. Skagit Cy.*, 66 Wn.2d 95, 401 P.2d 335 (1965), (also heard departmentally). There we held that conveyances of three supermarkets in separate locations by several partners desiring to do business in corporate form, to three newly organized corporations in which the partners were the only incorporators and stockholders in exchange for stock in the corporations, constituted sales as defined in RCW 28.45.010. We epitomized it this way: "The major problem is whether the transfer of ownership of real property from members of the partnership to the corporation in exchange for stock in the corporation constitutes a 'sale' within the meaning of the term as defined in RCW 28.45.010," and solved the problem by answering "yes," that it did constitute a sale.

Finally, I think we should look at the whole statute to see if the legislature intended to tax the instant transaction. In 1951, at its first extraordinary session, the legislature enacted chapter 11 to provide additional funds for the support of public schools, giving the school boards in each county authority to compel the county commissioners to pay to each district attendance credit of 17 cents per day. As an alternative, the commissioners were allowed to escape this mandate only by levying the 1 per cent excise tax on real-estate transactions as defined in RCW 28.45.060, the statute at issue here, providing that the money realized from this tax be paid to the schools in lieu of the 17 cents per attendance credit day. Laws of 1951, Ex. Ses., ch.11, § 1, p. 108.

In view of this drastic legislative means employed to compel the counties to impose the tax or in the alternative

pay 17 cents per pupil day to the schools, I doubt that the legislature contemplated that real-estate transfers to or from newly organized, dissolving, merging, consolidating or acquiring corporations be exempt from this tax unless such conveyances fell within the transactions specifically exempted.

A look at today's economic scene, significantly similar to that of 1951, makes clear that the legislature did not intend to exempt transfers of real estate in corporate mergers, consolidations and acquisitions from the scheme of taxation. *United States v. Von's Grocery Co.*, 384 U.S. 270, 16 L. Ed. 2d 555, 86 Sup. Ct. 1478 (1966), while not otherwise in point, depicts some of the pertinent economic facts of life in this country concerning the instant type of transaction.

That case involved an antimerger complaint brought by the United States to block the merger of two giant grocery chains in Los Angeles County. Although that opinion is not otherwise relevant to the instant case, it does contain an abundance of statistical data showing the enormous number of mergers taking place in only one industry, the grocery business, in Los Angeles County, and one must assume that the same thing is going on perpetually in every line of business or industry throughout major population centers of the state of Washington. Thus, while the tax involved is only 1 per cent of the gross sale, in the course of time it probably runs into millions of dollars which the legislators, I am confident, intended to put into school financing.

If, as I contend, this court has erroneously construed this tax statute in a series of decisions which all came before the court departmentally, we can derive little comfort from the often but wistfully expressed notion that the legislature will soon see our error and correct it. In many instances, this legislative remedy simply does not take place, and this court, of course, cannot make it happen. See Peck, *The Role of the Courts and Legislatures in the Reform of Tort Law*, 48 Minn. L. Rev. 265 (1963). We have forthrightly corrected errors in the past. *Greene v. Rothschild*, 68 Wn.2d 1, 5, 402 P.2d 356, 414 P.2d 1013 (1966). We should not hesitate to do so now.

I would reverse under the authority of *Christensen v. Skagit Cy.*, 66 Wn.2d 95, 401 P.2d 335 (1965), and let the county keep the tax.

FINLEY, C. J., concurs with HALE, J.

ROSELLINI, J., concurs in the result of the dissent.

---

March 22, 1968. Petition for rehearing denied.