[Civ. No. 42533. Second Dist., Div. One. May 17, 1974.]

SUNSHINE ART STUDIOS OF CALIFORNIA, INC.,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Ball, Hunt, Hart, Brown & Baerwitz, Edmond Gattone, James C. Maupin and Stephen B. Mitchell for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Mark W. Jordan, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**LILLIE, J.**—Plaintiff appeals from a judgment denying recovery of sales taxes paid under protest.

The facts are established by stipulation. Plaintiff is a California corporation incorporated in 1959; its place of business is El Monte. It is a wholly owned subsidiary of Sunshine Art Studios, Inc., (parent corporation), a Massachusetts corporation. A third corporation the activities of which are material is Junior Sales Club of America, Inc., also a Massachusetts corporation. Fifty percent of the stock of the parent corporation is owned by W. S. Robbins, 40 percent by R. E. Robbins and 10 percent by G. B. Robbins; 40 percent of the stock of Junior Sales is owned by W. S. Robbins, 40 percent by R. E. Robbins and 20 percent by A. P. O'Hara. During the period—June 1, 1962 to June 20, 1965—the "audit period" here at issue, the three entities conducted an interrelated business activity in the following manner.

The parent corporation shipped greeting cards in a quantity ordinarily determined by it (except on rare occasions when plaintiff requested additional cards) to plaintiff by common carrier on a straight bill of lading, plaintiff paying the freight-in. In many instances the parent corporation also shipped cartons and mailing labels to plaintiff with instructions that the labels be affixed to the cartons and that these be sent to ultimate purchasers by mail or parcel post. The parent corporation debited plaintiff for the greeting cards shipped to it in an amount ranging between 28 and 36 cents per box. This debit was made for inventory control purposes only and had no relation to, nor did it reflect, the actual value of the cards or the ultimate price for which they were sold. The parent corporation invoiced plaintiff for the cards shipped, and plaintiff paid these invoices whenever it could practically do so either because of a favorable cash position or having had sufficient time to compute the accumulated debits.

Junior Sales' role was to obtain orders for the greeting cards. It did this by advertising in national magazines for "salesmen" to purchase the cards under an arrangement whereby they ultimately paid to it about 90 cents per box of cards, then undertook to resell the box for $1.25. When Junior Sales received an order it prepared a label containing the name of the salesman and forwarded that label to plaintiff whereupon plaintiff would affix the label to a box of cards and send the box to the salesman. Occasionally plaintiff would insert sales literature into the boxes before sending them. "In some cases the salesman was located in California, and in other cases he was located in other states in the Western part of the United States. The actual percentage of salesmen in California is not known and cannot be determined at this time." The boxes sent out by plaintiff bore its return address in California although ultimate payment therefor was made by the salesmen to Junior Sales in Massachusetts. Plaintiff would then debit Junior Sales for the same amount for which it had itself been debited by the parent corporation plus a "service charge" of one and one-half cents per box. Thus under this arrangement Junior Sales never had any of the greeting cards in its possession and never exercised any dominion or control over them, except to advise plaintiff as to where they should be sent. During the subject audit period plaintiff devoted approximately 50 percent of its activities and time to the handling of the cards for the parent corporation and Junior Sales, the remainder involving other card business by plaintiff which is not relative to this action. There were no written contracts between plaintiff, the parent corporation and Junior Sales.

On July 22, 1959, defendant sent the following letter to plaintiff: "You are hereby notified that the Board, at its meeting July 22, 1959, ordered pursuant to § 6015 of the Revenue and Taxation Code that you be regarded for the purpose of the Sales and Use Tax Law as the retailer of tangible personal property sold through agents or representatives who obtain the property from you. Accordingly you are required to report and pay tax with respect to such sales measured by the actual selling price." Before plaintiff commenced its part in the tripartite arrangement, after its incorporation in August 1959, the parent corporation had (since 1953) maintained offices in California and conducted an operation similar to plaintiff's including the dealings with Junior Sales. During that time the parent corporation held a duly issued California Sales and Use Tax Permit and reported and paid sales taxes pursuant to Revenue and Taxation Code, section 6015; however in 1959 it cancelled this permit and thereafter plaintiff commenced doing business in the same offices and with the same personnel up to then utilized by the parent corporation. On May 5, 1967,

defendant served upon plaintiff a "Notice of Redetermination Sales and Use Tax" claiming that plaintiff owed $31,482.68 in sales taxes on the sales made by the salesmen during the years 1962 through 1965, together with interest of $5,681.52, or a total of $37,164.20. Plaintiff paid this sum under protest, then filed a claim for refund which was denied by defendant; thereupon plaintiff brought the within action for a recovery of the entire sum. Judgment was entered in favor of defendant.

The sole issue is whether appellant can be assessed for the payment of sales tax on the sales made by the salesmen in light of section 6051, Revenue and Taxation Code, which imposes such tax on "retailers," and section 6015 which provides " 'Retailer' includes: (a) Every seller who makes any retail sale or sales of tangible personal property." Appellant argues that the true "retailers" under the instant facts are the salesmen obtained by Junior Sales who after ordering the greeting cards through it (Junior Sales) resell them to the ultimate consumer. And indeed the trial court made a finding that: "The salesmen are retailers." Respondent, however, contends that the practicalities of the situation are such that these salesmen are so numerous and so scattered and so little subject to discovery and control by it (respondent) that enforcement and collection of the sales tax from them would be extremely difficult if not impossible;[1] that the Legislature, recognizing such a circumstance and realizing that substantial revenue would thereby escape, included a last paragraph to section 6015, Revenue and Taxation Code, designed to remedy this situation,[2] and that accordingly appellant properly may be called upon to pay the sales tax because it falls within the statutory purview of one of the "*distributors*" who under the last paragraph may likewise be regarded as "retailers" for taxation purposes. In this respect the trial court made the following finding: "Plaintiff distributed the cards to the salesmen and the salesmen obtained the cards from plaintiff. Plaintiff was the distributor of the cards to the salesmen." There appears to be no reported case

---

[1]The trial court made a finding that: "As retailers the salesmen would be liable for the sales tax. However, since the salesmen are so numerous, and since the sales are made on their own behalf, the State Board of Equalization could not effectively enforce the sales and use tax collection. . . ."

[2]"When the board determines that it is necessary for the efficient administration of this part to regard any salesmen, representatives, peddlers or canvassers as the agents of the dealers, distributors, supervisors, or employers under whom they operate or from whom they obtain the tangible personal property sold by them, irrespective of whether they are making sales on their own behalf or on behalf of such dealers, distributors, supervisors, or employers the board may so regard them and may regard the dealers, distributors, supervisors, or employers as retailers for purposes of this part."

which has construed section 6015 as applied to the instant factual situation, but from our view of the stipulated facts herein and our construction of the section we agree with both the premise of the trial court's finding and its conclusion that plaintiff can be considered to be a "distributor" under the last paragraph of section 6015. Webster's International Dictionary, second edition, defines "distributor" as "1. One who or that which distributes. . . . 2. An agent or agency for marketing, usually in a particular territory, some manufactured goods or other commodities." This definition is cited with approval in *England* v. *Automatic Canteen Co. of America* (6th Cir. 1965) 349 F.2d 989, 991.

Appellant contends that validly it could not be considered to be a "distributor" because it merely acted as a warehouseman of the cards or as a deliveryman of the cards in roles parallel to "the mailman or United Parcel delivery man"; and that one cannot be a "distributor" within the meaning of section 6015 without having "some interest" in the tangible personal property which is being distributed. Appellant does not make clear whether it intends its term "interest" to relate to the ordinary sense of concern for the quality of the cards and the manner in which they are regarded by the ultimate consumer (customer relations), or in the legal sense of ownership. However, it appears that it intends the latter meaning because it strongly urges that it never actually purchased the cards from the parent corporation; if this is so, its position is an obviously incorrect one because it is commonplace knowledge, of which we can take judicial notice (Evid. Code, § 452, subds. (g), (h); § 459), that many distributors of products take them on straight consignment;[3] even one undisputedly a retailer may deal in consigned merchandise. As to the more valid form of "interest," pertaining to customer relations, while it is clear that a genuine warehouseman or deliveryman has no concern with what lies under the wrapping of the package left with him to be stored or delivered, this is patently not true of appellant under the stipulated facts that it is a subsidiary of the parent corporation, manufacturer and primary "dealer" in the cards, and that the boxes of cards sent to the salesmen by appellant

---

[3]The trial court made a finding that the parent corporation "sold the cards to plaintiff." Plaintiff vigorously objects to the finding, maintaining that the stipulated facts contain a statement that parent's "debit [to plaintiff] was made for inventory control purposes only . . ." which encompasses a mere bookkeeping entry, and not an actual sale, and that the court and defendant were bound by this stipulation. Plainly, however, because an actual sale to plaintiff was unnecessary to create a manufacturer-distributor relationship the finding is immaterial to the decision, other findings being sufficient to support the judgment, and therefore is not prejudicial. (*American National Bank* v. *Donnellan,* 170 Cal. 9, 15 [148 P. 188]; *Efron* v. *Kalmanovitz,* 249 Cal.App.2d 187, 192 [57 Cal.Rptr. 248].)

bore its identification in the form of a return address, and at times even contained sales literature inserted by it. Even were we to accept the requirement of an indicia of ownership in the cards and adopt appellant's argument that the cards were never sold to it, obviously they still belonged to the parent corporation until delivered to the salesmen; and during that time appellant, as a wholly owned subsidiary of the parent corporation, necessarily had to have the same property "interest" in the cards as did the parent corporation, appellant's actual "owner."

We are further persuaded to affirm the trial court's determination that appellant is subject to the payment of sales tax as a "distributor," by the undisputed fact that from 1953 until appellant was incorporated in 1959, the parent corporation conducted precisely the same activities in California as did appellant thereafter in relation to the same form of sales tax liability, indeed occupying the same premises and utilizing the same personnel; and that during the entire time the parent corporation paid the tax pursuant to section 6015.[4] We fail to see how anything in relation to the tax was changed by the creation and operation of appellant as a subsidiary which in its total effect meant nothing more than that thereafter the manufacturing portion of the over-all business activity was conducted in Massachusetts. If appellant is thereby permitted to escape paying the sales tax such proceeds will probably be lost to the State of California, because it appears that neither the parent corporation nor Junior Sales, as Massachusetts corporations, may be subject to such payment under the "commerce clause" of the United States Constitution (art. I, § 8, cl. 3) (cf. *Nat. Bellas Hess* v. *Dept. of Revenue,* 386 U.S. 753, 758 [18 L.Ed.2d 505, 509, 87 S.Ct. 1389]); and the scheme of distribution of the parent organization is such that as a practical matter use tax cannot be collected.

Appellant claims that if any of the tripartite entities was a distributor,

---

[4]In this respect the trial court made the following findings:

"Plaintiff's operation in the distribution of the greeting cards to the salesmen is identical to the operations of PARENT during the period (1953 to 1959) that PARENT conducted the operations on its own behalf. Defendant treated plaintiff as it had treated PARENT under Revenue and Taxation Code section 6015, and for purposes of the sales and use tax law there could be no difference in treatment. The relationship which existed between PARENT and plaintiff in the operation of the business involving the distribution of greeting cards was identical both before and after plaintiff was incorporated."

"At no time during the period from 1953 when the operations in question commenced until 1959 when PARENT cancelled its seller's permit and incorporated plaintiff, did PARENT challenge in any authorized legal proceedings the State Board of Equalization's determination that it was a retailer under Revenue and Taxation Code section 6015."

it was Junior Sales, which we have noted is probably immune from the tax obligation under the commerce clause. In relation to this claim appellant has furnished a schematic chart of its own creation which depicts the parent corporation as having been most removed in physical relationship from the salesmen, it (appellant) next removed and Junior Sales closest to the salesmen. This chart is, however, unrealistic under the stipulated facts that it was appellant which actually delivered the greeting cards to the salesmen, and that this act constituted the final service accorded to the salesmen by any of the tripartite entities.

Appellant cites as error the trial court's conclusion that Junior Sales was its agent. However, we believe that the court could reasonably so conclude under the stipulated facts that Junior Sales solicited orders for the greeting cards from the salesmen and appellant thereafter derived a benefit from filling these orders. Moreover appellant concedes that Junior Sales was the parent corporation's agent and we see a clear inconsistency in the concession by it (appellant) of a principal-agent relationship between parent and Junior Sales and its denial of such relationship between it (appellant) and Junior Sales, particularly in light of the evidence that Junior Sales had more direct dealings with it (appellant) than Junior Sales had with the parent corporation. But even were the court's conclusion erroneous it would not be prejudicial because it is immaterial to the resolution of the issue herein, and other findings and conclusions are sufficient to support the judgment.

Appellant claims that the trial court in reaching its conclusion applied the "Unitary Business Theory" in considering the relationship of the tripartite entities herein, and that this was error because such theory pertains only to multistate operated business entities which have a total unity of ownership operation and management, and in any event has only been considered by the courts in relation to income tax disputes. We find no adoption of this principle by the trial court, rather an opposite finding that it is necessary to regard the activities of the tripartite "in an economic sense and not a structural sense."

■ It was stipulated that "In some cases the salesman was located in California, and in other cases he was located in other states in the Western Part of the United States." In this respect appellant says that the tax assessment thus necessarily included amounts based on sales made outside of California, and that defendant is prohibited under the commerce clause from collecting sales taxes on sales consummated out of the state. Its position on this point of law is correct in the abstract but its problem is an eviden-

tiary one—appellant totally failed to offer any evidence as to which of its sales during the audit period were made out of California. It is settled law that in an action for the recovery of sales taxes paid under protest the burden of proving an excessive assessment rests on the taxpayer plaintiff. (Rev. & Tax. Code, § 6091; *People* v. *Schwartz,* 31 Cal.2d 59, 64 [187 P.2d 12]; *Flying Tiger Line* v. *State Bd. of Equal.,* 157 Cal.App.2d 85, 99 [320 P.2d 552].)

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.