[No. B017678. Second Dist., Div. Five. June 10, 1987.]

MACRODYNE INDUSTRIES, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

580

---

**COUNSEL**

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Mark D. Pastor for Plaintiff and Respondent.

**OPINION**

ASHBY, J.—Macrodyne Industries, Inc. (Macrodyne), brought an action for a refund of state sales and use tax. Trial was by the court on stipulated facts and exhibits. The trial court found that Macrodyne was entitled to a refund, and the State Board of Equalization (Board) brings this appeal.

The following stipulated facts were submitted to the trial court. During the sales tax period in question, from January 1, 1974, through December 31, 1976, Macrodyne was primarily a manufacturer of parts related to the aircraft and aerospace industry. Until October 4, 1976, Macrodyne conducted business through four operating divisions, each operating independently of the others. On October 1, 1976, Macrodyne entered into agreements to transfer three of its divisions to three of its preexisting wholly owned subsidiaries. Each of the three agreements provided that Macrodyne transfer to the subsidiary all of the assets and liabilities of the division being transferred. Nevertheless, the stipulated facts state, "Although the subsidiaries assumed the liabilities of the transferred divisions, Macrodyne remained jointly liable for the same liabilities after the subject transfers."

The Board audited Macrodyne and found the transfers of the divisions to its subsidiaries were taxable sales of assets. The Board's auditors based their conclusion on the determination that the liabilities of the divisions were transferred to the subsidiaries, and that the transfers of the liabilities represented the consideration to Macrodyne for purposes of the sales tax. After a petition for redetermination and hearings, the Board found that Macrodyne owed $98,643.73 in sales tax, plus accrued interest of $49,046.67. After Macrodyne paid the total, $147,690, it brought this action for refund.

**DISCUSSION**

■ Macrodyne contends that the transfers in this case were not sales but a corporate reorganization. Macrodyne's position is based on the argument that the relationship of the former divisions to the parent did not change after the transfer. The stipulated facts show that Macrodyne remained liable for the obligations of the divisions, and after the transfers Macrodyne and the subsidiaries had directors and officers in common. Macrodyne further argues that the ultimate stockholders of Macrodyne and the subsidiaries were identical. These facts, however, do not establish that Macrodyne and its already existing wholly owned subsidiaries were not, in reality, separate corporations.

■ In a suit for tax refund the burden of showing tax assessment error and proving facts upon which an assessment will be changed rests on the

party seeking the refund. (*Sunshine Art Studios of California, Inc.* v. *State Bd. of Equalization* (1974) 39 Cal. App. 3d 223, 230-231 [114 Cal.Rptr. 24].) ■ For sales tax purposes, a parent corporation's ownership of the stock of a subsidiary does not, by itself, create an identity of corporate interest between the two. (*N. W. Pac. R.R.* v. *State Bd. of Equalization* (1943) 21 Cal.2d 524, 530-531 [133 P.2d 400].) The identity of officers of two corporations does not establish the identity of the corporations. (*Id.,* at p. 531.) Where the corporation and its subsidiary behave as separate entities the transfers between them which comply with the statutory definition of a sale are subject to sales tax. (*Id.; Mapo, Inc.* v. *State Bd. of Equalization* (1975) 53 Cal.App.3d 245, 248-249 [125 Cal.Rptr. 727].) Whether a parent and subsidiary should be treated as a single entity depends on, among other things, whether distinct corporate identities have been maintained and whether the corporations have independent business purposes. (*Mapo, Inc.* v. *State Bd. of Equalization, supra,* 53 Cal.App.3d at p. 248.)

Nothing in the stipulated facts indicates that before the transfers the subsidiaries were separate corporations "in name only." (*Id.,* at p. 249.) Rather, a contrary inference arises. It was stipulated that one of the primary reasons for the transfer was that the landlord at the premises of one of the divisions wanted a "separate corporation to be the lessee of those premises." Further, Macrodyne determined that the divisions might be in a better borrowing position if they were made into "separate, corporate entities." To accomplish these goals the divisions were sold to the subsidiaries. When the choice is made to conduct business through corporate entities, parties assume both the privilege and the burdens of that decision. (*Aladdin Oil Corp.* v. *Perluss* (1964) 230 Cal.App.2d 603, 614 [41 Cal.Rptr. 239].) ■ Having found that the nature of the parties involved in the transactions does not prevent the imposition of a sales tax, we proceed to analyze the transactions themselves to determine whether Macrodyne is entitled to a refund.

A sales tax is imposed for "[t]he privilege of selling tangible personal property at retail [on] the gross receipts of any retailer from the sale of tangible personal property ...." (Rev. & Tax. Code, § 6051.) A sale is "[a]ny transfer of title or possession ... in any manner ... of tangible personal property for a consideration...." (Rev. & Tax. Code, § 6006, subd. (a).) Consideration is a benefit conferred upon the promissor by another to which the promissor is not lawfully entitled, or any prejudice suffered by the other which is not imposed by law. (Civ. Code, § 1605.) ■ An assumption of indebtedness by the transferee can constitute consideration. (*Cal-Metal Corp.* v. *State Bd. of Equalization* (1984) 161 Cal.App.3d 759, 766 [207 Cal.Rptr. 783].)

■ The trial court found that because Macrodyne received no consideration there was no sale in this case. The Board contends that the transfer-

ence of liabilities from Macrodyne to the subsidiaries was the consideration. The Board relies on language in the stipulated facts which paraphrases the three contracts between Macrodyne and its subsidiaries, while ignoring the stipulated fact that Macrodyne remains jointly liable for the liabilities of the transferred divisions despite the language of the contracts. Since the transfer of the divisions to the subsidiaries had no effect on the liability of Macrodyne, no benefit was conferred upon Macrodyne by the transfer. There being no consideration, there could be no sale. Where there is no sale, no sales tax may be imposed.

*Cal-Metal Corp.* v. *State Bd. of Equalization, supra,* 161 Cal.App.3d 759, upon which the Board relies, is distinguishable. The transferee in *Cal-Metal* was a commencing partnership, not a preexisting separate entity. Thus, *Cal-Metal* involved the application of Sales and Use Tax regulation 1595, subdivision (b)(4) (Cal. Admin. Code, tit. 18, § 1595, subd. (b)(4))[1] entitled "Contribution to Commencing Corporation or Commencing Partnership"). (*Cal-Metal* v. *State Bd. of Equalization, supra,* 161 Cal.App.3d at p. 762.) The transfer before us was to a preexisting corporation. More importantly, there was no stipulation in *Cal-Metal* to the fact that the transferor remained jointly liable. The *Cal-Metal* court, therefore, interpreted the language of the contract which stated that " '... the partnership shall assume the liabilities ...' " of the transferred property. (P. 765.) The Board in this case stipulated that Macrodyne jointly retains the liabilities of the division and is bound by that factual stipulation. (*Bechtel Corp.* v. *Superior Court* (1973) 33 Cal.App.3d 405, 411 [109 Cal.Rptr. 138].)

Macrodyne's alternative theory is based on *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22, 29 [136 Cal.Rptr. 574, 560 P.2d 3], which imposed liability on the transferee corporation where the transferee was a mere continuation of the transferor. Macrodyne contends that under the rule of *Ray* the subsidiaries would have been required to assume the liabilities of the transferred divisions, thus any assumption of liabilities would not be consideration as a matter of law. We question the applicability of *Ray,* because it is a tort case and does not involve a tax question. Our affirmance of the trial court is based on our finding that there was no consideration in this case for the reasons discussed above.

The Board's contention that the transfer does not qualify for the occasional sale exemption need not be reached in light of our holding that there was no sale.[2]

---

[1] Regulation 1595, subdivision (b)(4), creates a sales tax exemption for the "transfer of property to a commencing corporation" under limited circumstances.

[2] Macrodyne, relying on an unpublished Court of Appeal opinion entitled *Lockheed Aircraft Corp.* v. *State Bd. of Equalization* (Nov. 25, 1981) 2d Civ. 61030, seeks to collaterally es-

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 8, 1987, and appellant's petition for review by the Supreme Court was denied August 26, 1987.

top the Board from opposing its refund action. Macrodyne argues that the issue presented here was decided against the Board in the unpublished opinion. Assuming that (1) the exception for relying on unpublished opinions found in California Rules of Court, rule 977(b), applies and (2) that a taxpayer may assert collateral estoppel against the Board, the Board is not barred by the ruling in the *Lockheed* case. The court found that transfers between Lockheed and its subsidiaries were not subject to sales tax because there was no consideration. The finding, however, was based on facts not present in this case. Central to the court's finding was the fact that the transferee subsidiaries were not preexisting but were incorporated solely for the purpose of the transfers. Moreover, there was no stipulation that the parent corporation, Lockheed, remained jointly liable with the transferee subsidiaries for the obligations of the former divisions. Thus the issue resolved there is not "identical." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892] .)