[Civ. No. 66506. Second Dist., Div. Two. May 19, 1983.]

NEWCO LEASING, INCORPORATED et al., Plaintiffs and Appellants, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

**122**

**COUNSEL**

Vincent Pavis for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**COMPTON, Acting P. J.**—Plaintiffs Southwest Leasing Corporation (Southwest) and Newco Leasing, Incorporated (Newco), both California corporations, instituted an action against defendant, the California State Board of Equalization (Board), seeking a refund of use taxes paid under protest.

Both actions, involving nearly identical facts and issues, were consolidated at the superior court level and tried before a judge sitting without a jury on an agreed statement of facts and limited testimonial and documentary evidence. The trial court entered judgment for defendant Board. Plaintiffs have appealed. We affirm.

 Although plaintiffs have attacked the imposition of the tax on various grounds, the issue simply stated, is whether the exemption from the payment or collection of sales and use tax enjoyed by individuals or business entities engaged in the leasing to the public of certain types of motor vehicles, also exempts from tax the transfer and assignment of the vehicles and the leases from one lessor to another.

The sales tax in California is an excise tax on the privilege of selling tangible personal property at retail. (Rev. & Tax. Code, § 6051.)[1] Its counterpart or complementary tax—the use tax—is a similar type of tax imposed on the use or consumption of such property where the acquisition of the property by the user

---

[1] All section references are to the Revenue and Taxation Code unless otherwise indicated.

or consumer was for certain reasons not subject to the sales tax. (§§ 6201, 6202.)

Although the sales tax is imposed on the retail seller, and the use tax on the user or consumer, generally speaking the retailer is authorized and required to collect the sales or use tax from the purchaser or user. (§ 6203.) In the case of vehicles required to be registered with the Department of Motor Vehicles, no sales tax is imposed and the seller is not required or authorized to collect the use tax from the purchaser unless such seller is a licensed manufacturer, dealer or dismantler. (§§ 6282, 6292.)

By statutory definition, a lease is a "sale" or "purchase" (§§ 6006, subd. (g), 6010, subd. (e)) and the above referenced exemption from sales tax on vehicles does not apply to "sales by lease." This expansion of the terms "sale" or "purchase," however, has resulted in a multitude of practical and legal problems with respect to the application of the sales and use tax to certain instrumentalities of interstate commerce. (See generally, Annot., Sales and Use Taxes on Leased Tangible Personal Property (1980) 2 A.L.R.4th 859.)

As a result, section 6006 was amended in 1971 to exclude from the definition of sale a lease of mobile transportation equipment. (§ 6006, subd. (g)(4).)[2] Thus, the purchase of such equipment by an individual or business entity engaged in the business of leasing the equipment to the public is taxed as a retail sale but the subsequent leasing of the equipment is exempt from further taxation.

The undisputed facts upon which these cases were tried can be summarized as follows. Plaintiffs are each engaged in the business of leasing automobiles, trucks, and other motor vehicles to the general public. In an effort to expand their leasing markets and attract new customers, plaintiffs purchased from various third party leasing companies outstanding leases held by those companies on a variety of motor vehicles and equipment. A significant portion of the vehicles thus acquired qualified as mobile transportation equipment under section 6023.

---

[2]Section 6023 defines mobile transportation equipment as follows: "'Mobile transportation equipment' includes equipment such as railroad cars and locomotives, buses, trucks (except 'one-way rental trucks'), truck tractors, truck trailers, dollies, bogies, chassis, reusable cargo shipping containers, aircraft and ships, and tangible personal property which is or becomes a component part of such equipment. 'Mobile transportation equipment' does not include passenger vehicles as defined in Section 465 of the Vehicle Code, trailers and baggage containers designed for hauling by passenger vehicles, or 'one-way rental trucks' as defined and identified pursuant to Section 6024."

The term includes only vehicles used to transport persons or property for substantial distances; it does not refer to items such as hand dollies, forklift trucks, mine cars and pilot boats used for a short-distance moving in limited areas as an airport or warehouse, for example. The term also covers pickup trucks as well as lifters and barges designed to be carried aboard vessels for substantial distances. (Cal. Admin. Code, tit. 18, ch. 2, § 1661, subd. (b)(1).)

Under the terms of the purchase agreement no sales price was specified. In most cases, plaintiffs simply assumed the sellers' unpaid obligation to the lending institution which had financed the original purchase of the vehicles. No taxes were paid on the transfers by either plaintiff.

Southwest's acquisition of the equipment occurred between June 1972 and June 1974. Newco's acquisition occurred in February of 1973. Newco was audited by the Board in 1974, and Southwest in 1975. On the basis of these audits, the Board determined that plaintiffs owed use tax on the acquisitions and based the tax on the amount of the unpaid balance owed by the seller to the lending institution.

Plaintiffs point out that since the payments due to them under the leases are fixed, they cannot make adjustment in those payments to offset the increased tax burden. They further contend that since the imposition of the tax is contrary to the spirit and purpose of the law, it could not have been foreseen or expected and thus no allowance was made for such additional cost in the purchase agreements.

From this basis of apparent economic hardship, they contend variously that to impose such a tax amounts to double taxation, violates public policy, runs afoul of legislative intent, and imposes a restraint on alienation because from the nature of the leasing business, no transfer of this type will ever again be economically feasible.

Of course nothing in the law prevents the taxation of activities which are carried on at a loss. (*Union League Club* v. *Johnson* (1941) 18 Cal.2d 275 [115 P.2d 425]; *Market St. Ry. Co.* v. *Cal. St. Bd. Equal.* (1955) 137 Cal.App.2d 87 [290 P.2d 20].) In order to prevent the possibility of untoward economic consequences, the lessor of mobile transportation equipment who wishes to sell the leases must consider the tax factor in determining his selling price. Similarly the buyer must consider the tax consequences in agreeing to the purchase price. The answer to what plaintiffs' view as a losing situation lies in creative bargaining and the dynamics of the marketplace. Furthermore, in this case testimony established that plaintiffs only intented to break even on the acquisitions with an eye to future increased business.

Our role here is simply to determine whether the Board, in making the assessment in controversy, properly interpreted the relevant sections of the code and its own regulation. The Board's interpretation of the legislative will must be reasonable and the Board must be faithful to its own announced regulations. The ultimate resolution, however, of whether the Board has correctly interpreted the statutes and its regulations rests with the courts. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86 [130 Cal.Rptr.

321, 550 P.2d 593]; *International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923 [163 Cal.Rptr. 782, 609 P.2d 1]; *Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900 [167 Cal.Rptr. 366, 615 P.2d 555].)

■■■ Despite plaintiffs' attempt to characterize the transactions under consideration in different terms, the bottom line is that plaintiffs purchased at retail a number of items of mobile transportation equipment, albeit used and already leased to third parties.

The transactions constituted retail purchases of tangible personal property subject to either sales or use tax depending on the application of the relevant statutes. Whenever tangible personal property is sold, it is subject to taxation unless specifically exempt.

Since the properties sold were "vehicles" within the meaning of section 6272, plaintiffs fell within the provisions of sections 6282 and 6292. Section 6282 provides an exemption from sales tax for sales of vehicles required to be registered under the Vehicle Code when the retailer is other than a licensed or certificated dealer, manufacturer, or dismantler. Nothing in the record establishes that the transferors here were so licensed or certificated. Accordingly, the sales were exempt from the sales tax but the purchases were subject to a use tax payable by plaintiffs pursuant to section 6292.

This does not constitute double taxation any more than the imposition of sales or use tax on the sale of any other used vehicle where the sales tax has been paid on a prior sale.

The exemption from taxation for the leasing of mobile transportation equipment cannot be read to apply to the sale and purchase of such equipment from the lessor. Plaintiffs did not lease the equipment from their transferors—they purchased all of the indicia of ownership. They then stood in the shoes of the former owner-lessor with the right to receive the lease payments from the lessees and the right to repossess the vehicles in the event of a default.

In March of 1980, the following provision of regulation 1661, subdivision (f) was adopted. "If in connection with an assignment of an existing lease which falls within the scope of [Revenue and Taxation Code] sections 6006(g)(4) and 6010(e)(4) [dealing with mobile transportation equipment] title to the leased property is transferred to assignee, the transfer is a sale to the assignee and the assignee is the consumer of the equipment."

While this regulation was promulgated after the events in this case, we are of the opinion that it simply states what the law was prior thereto and does not constitute a change in interpretation.

■ Plaintiffs next argue that the consideration paid at the time the transactions were entered into was for the leases of the equipment and not the equipment itself. They attempt to support this argument by pointing out that the equipment was never inspected before being purchased and that it was carried on their ledgers as an account receivable. Plaintiffs conclude therefore that it was incorrect for the Board to determine "sales price" when it was the leases and not the equipment that was being transferred. Accordingly, they maintain that the leases must be valued by their reversionary interest in the vehicle at the end of the lease term.

Plaintiffs' argument is not persuasive. Although Newco and Southwest were assigned all interest in a number of existing leases, they were actually purchasing, at the time of transfer, mobile transportation equipment subject to outstanding leases. Their assumption of the liability owed by the respective sellers constituted the consideration given for the transfers. It is the value of that consideration which is the measure of the sales price and the ultimate tax liability. Reversionary value would only reflect the market value of a given vehicle at the end of the lease, not at the time of transfer.

"The parties by bona fide agreement having valued the property in money, under the express terms of the statute [Rev. & Tax. Code, § 6011, subd. (a)] have fixed the measure of the tax. To make market value rather than agreed value the measure would create almost insuperable administrative difficulties, since the taxing power would be compelled in every transaction to look behind the agreed value and ascertain the actual market value of the property traded in. In the give and take of the market place the value arrived at by free negotiation of the parties may safely be relied upon to furnish a reasonable measure of the value in money of property traded in." (*Hawley* v. *Johnson* (1943) 58 Cal. App.2d 232, 237 [136 P.2d 638].)

We agree with the Board that absent an agreed upon price between the parties to the transaction, the auditors were correct in deeming that the assumption of the remaining unpaid liability of the seller of each vehicle was the consideration in the transfer of the equipment.

Finally plaintiffs make various assertions as to the unconstitutionality of certain provisions of the Revenue and Taxation Code as applied to leasing of mobile transportation equipment. We have examined these assertions and find them to be devoid of merit principally for the reason that they have no direct bearing on the issue presented. In most instances the statutes have been amend-

ed or repealed. In any event were we to agree with plaintiffs as to the infirmity of the prior statutes the result of this litigation would be the same.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.