[No. B005301. Second Dist., Div. Seven. Nov. 9, 1984.]

CAL-METAL CORPORATION, Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

760

COUNSEL

Martin & Deacon, Martin, Davis & Deacon and John Deacon for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Patti S. Kitching, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**JOHNSON, J.**—This appeal challenges the trial court's granting of summary judgment in favor of the respondent. Two central issues are raised on appeal. First, does the transfer of property to a commencing partnership in which the partnership assumes the indebtedness of the transferor, a copartner, constitute a sale under the California Revenue and Taxation Code. Second, assuming a sale, is it proper to assess the transferor's tax liability based on the total amount of the indebtedness assumed by the partnership. Because we find the trial court properly decided these issues, we affirm.

I. FACTS AND PROCEEDINGS BELOW

On February 1, 1980, the appellant and Millsteel Company (Millsteel) entered into a partnership agreement. As part of the agreement, the appellant transferred equipment to the partnership valued at $2.8 million. The partnership agreed to assume the liabilities on the equipment in the amount of $1,242,435. Thus the appellant's capital contribution to the partnership was $1,557,565.

The State Board of Equalization (the Board) determined the above transaction constituted a taxable sale under Revenue and Taxation Code section 6001 et seq. and Sales and Use Tax regulation 1595, subdivision (b)(4) (Cal. Admin. Code, tit. 18, § 1595, subd. (b)(4)). The Board determined the amount of sale subject to taxation was $1,056,070, as to which the Board imposed a tax of $62,814.24 plus interest in the amount of $6,132.93.[1]

---

[1]The Board determined the equipment was part real property and part tangible personal property and asserted a sales tax on that portion of the assumed encumbrance attributable to the tangible personal property.

On February 10, 1981, the Board issued a notice of determination of sales and use tax deficiency pursuant to Revenue and Taxation Code section 6486. It informed the appellant of the amount of assessed tax as described above.

On March 11, 1981, the appellant filed a petition for redetermination of tax. On July 17, 1981, the petition was heard. On August 11, 1981, the Board issued its decision refusing to adjust the original determination. On October 19, 1981, the Board issued a notice of redetermination confirming the assessment of tax in the amount of $62,814.24 and redetermining interest in the amount of $11,158.05.

The appellant paid the total assessment of $73,972.29 on October 29, 1981. On February 8, 1982, the appellant filed a claim of refund with the Board. This was denied on March 31, 1982. On June 29, 1982, the appellant filed a complaint for recovery of overpayment of the tax with the trial court.

On September 7, 1983, the appellant filed a notice of motion and motion for summary judgment. On October 19, 1983, the Board filed a similar motion. Both motions were argued before the trial court, and after supplemental briefing, the court, on November 29, 1983, issued its minute order granting the Board's motion and denying the appellant's motion. On February 9, 1984, the court executed and filed a summary judgment.

A timely notice of appeal was filed on February 24, 1984.

II. The Taxpayer Transferred Equipment to a Commencing Partnership and Received as Consideration an Assumption of Indebtedness. This Was a Taxable Sale Under the Sales and Use Tax Law.

The appellant (the taxpayer) contends the transfer of equipment to the partnership in return for the partnership's assumption of the equipment's liability was not a sale and therefore was not a taxable transaction. In particular, the taxpayer challenges Sales and Use Tax regulation 1595, subdivision (b)(4) which unambiguously states such a transaction is taxable. The taxpayer contends this regulation is inconsistent with Revenue and Taxation Code section 6001 et seq.

"The Legislature has delegated to the Board the duty of enforcing the sales tax law, and the authority to prescribe and adopt rules and regulations. (Rev. & Tax. Code, §§ 7051, 7052.)" (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020 [106 Cal.Rptr. 867].) When the Board has promulgated a formal regulation which determines the proper classification of the taxable event without interpretation or construction of the regulation, the proper scope of review is

one of limited judicial review. The standard is whether the regulation was arbitrary, capricious, or had no reasonable or rational basis. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 92-93 [130 Cal.Rptr. 321, 550 P.2d 593]; *Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1166 [199 Cal.Rptr. 886]; see also *Lockheed Aircraft Corp.* v. *State Bd. of Equalization* (1978) 81 Cal.App.3d 257, 270 [146 Cal.Rptr. 283], [board's definitions of taxable property must fall within the ambit of the tax statutes and be reasonable classifications thereunder].)

We start with an overview of the taxing statutes themselves.

■ Revenue and Taxation Code section 6006, subdivision (a) *broadly* defines a "sale" as "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. . . ."[2] This definition coincides with the common law definition of a "sale" and parallels the Commercial Code definition. (*Select Base Materials* v. *Board of Equalization* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006, 1012 [99 Cal.Rptr. 802].) ■ The consideration need not be money, it may be any valuable consideration. (See *Newco Leasing, Inc.* v. *State Bd. of Equalization* (1983) 143 Cal.App.3d 120, 126-127 [191 Cal.Rptr. 588], [assumption of liability constitutes consideration for transfer of property].)

The amount of sales tax is measured by the "gross receipts" received. (§ 6051.) ■ ■ ■ ■ "Gross receipts" is defined as "[t]he total amount of the sale or lease or rental price . . . of the retail sales of retailers, valued in money or otherwise . . . ." (§ 6012.)[3] ■ As stated earlier, the assumption of liability owed by a transferor of property can constitute the consideration for the transfer. That consideration is the measure of the

---

[2]All section references are to the Revenue and Taxation Code unless otherwise indicated.

[3]As part of appellant's challenge to the imposition of the sales tax, the appellant contends the transfer at issue, even if it was a sale, was not a *retail* sale as required. Section 6007 defines a "retail sale" as a ". . . sale for any purpose other than resale in the regular course of business in the form of tangible personal property." The appellant focuses on the language "regular course of business" and contends since it was not the appellant's usual practice to contribute assets to a commencing partnership, the sale did not constitute a retail sale as required. This same argument has already been rejected in prior decisions. The phrase "in the regular course of business" refers to and limits the word "resale," not the word "sale." (*Market St. Ry. Co.* v. *Cal. St. Bd. of Equal.* (1955) 137 Cal.App.2d 87, 94 [290 P.2d 20].) Thus a sale does not have to occur in the regular course of business of a seller for it to be taxable. (*Ibid.*; *Bigsby* v. *Johnson* (1941) 18 Cal.2d 860, 862-863 [118 P.2d 289].) The appellant concedes at the time of the transaction it was a retailer within the meaning of the act.

sale price and thus the measure of the ultimate tax liability. (*Newco Leasing, Inc.* v. *State Bd. of Equalization, supra,* 143 Cal.App.3d at p. 126.)

■ The taxpayer's transaction was a taxable transaction under the code since the transaction constituted a sale under section 6006, subdivision (a). The taxpayer indisputably transferred title of the property to the partnership. As the partnership agreement stated, "CMC [the taxpayer] shall contribute all its right, title, and interest in the property . . . ." Furthermore, the appellant received valuable consideration for this transfer. As the agreement states, ". . . the partnership shall assume the liabilities . . . therein." Such assumption of liabilities constituted valuable consideration.

The taxpayer nevertheless contends it did not sell the equipment to the partnership, it merely contributed the equipment. In support of this argument, the appellant cites *Milana* v. *Credit Discount Co.* (1945) 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621], and *H.S. Crocker Co., Inc.* v. *McFaddin* (1957) 148 Cal.App.2d 639, 644 [307 P.2d 429], and draws from these cases the conclusion the hallmark of a transaction denoting a sale is the absolute nature of the right being transferred. While we do not dispute this conclusion, we are hard pressed to understand how this supports the taxpayer's position. As stated above, the partnership agreement expressly provided *all rights, title, and interest* in the property was transferred to the partnership. Given this express provision, it's difficult to see how the appellant can contend it did not transfer its right absolutely. The *McFaddin* court itself recognized, "If there is a transfer of ownership the transaction is a sale." (Cites omitted.) (*H.S. Crocker Co., Inc.* v. *McFaddin, supra,* 148 Cal.App.2d at p. 644.)

The taxpayer apparently wants this court to ignore the fact the property was transferred to a separate legal entity, the partnership. For instance, the appellant argues there was no absolute transfer of ownership since the appellant as cogeneral partner retained a say in the use of the equipment. (7) However, as the Board correctly points out, although under traditional legal concepts the partnership was regarded merely as an aggregate of individuals, this is no longer the case. As stated in *White* v. *Cox* (1971) 17 Cal.App.3d 824, 828 [95 Cal.Rptr. 259, 45 A.L.R.3d 1161], "unincorporated associations are now entitled to general recognition as separate legal entities . . . ." (See also *People* v. *Sobiek* (1973) 30 Cal.App.3d 458, 467 [106 Cal.Rptr. 519, 82 A.L.R.3d 804], cert. den. (1973) 414 U.S. 855 [38 L.Ed.2d 104, 94 S.Ct. 155], [partner who stole partnership property could be found guilty of stealing property "of another," in part, because a partnership is a separate legal entity]; *Barr* v. *United Methodist Church* (1979) 90 Cal.App.3d 259, 265 [153 Cal.Rptr. 322], cert. den. (1979) 444 U.S. 973 [62 L.Ed.2d 388, 100 S.Ct. 468].) California statutory law has also

adopted this position. (See *White* v. *Cox, supra,* 17 Cal.App.3d at p. 827; see also § 6005.) The taxpayer having chosen to conduct its business under a particular arrangement cannot disregard such an arrangement when it would be to the taxpayer's advantage. (*Gray* v. *Powell* (1941) 314 U.S. 402, 414 [86 L.Ed. 301, 311, 62 S.Ct. 326]; *Higgins* v. *Smith* (1940) 308 U.S. 473, 477 [84 L.Ed. 406, 410-411, 60 S.Ct. 355].) ■ As the court stated in *Mercedes-Benz* v. *State Bd. of Equalization* (1982) 127 Cal.App.3d 871 [179 Cal.Rptr. 758], a case in which the appellant had to pay a higher use tax because it was a wholly owned subsidary of a manufacturer rather than a subdivision: "As . . . many . . . cases have pointed out, a business may elect various forms to accomplish what it regards as valuable advantages. If it elects to conduct that business through the device of separately incorporated, although wholly owned subsidiaries, and thereby obtain the advantages of separate corporate entities, it must also suffer whatever disadvantages attach to that election. No constitutional provision allows a business to secure the advantages of the form it selects and to avoid the disadvantages which accompany, and are the price of, its election." (127 Cal.App.3d at p. 874.) (See also *Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900, 915 [167 Cal.Rptr. 366, 615 P.2d 555].)[4]

■ As part of its argument, the taxpayer contends the consideration for the transfer was not a "fixed price," but a profits and loss interest in the partnership. But as emphasized above, this is not an accurate statement of the consideration the appellant received. As discussed, the partnership in return for receiving the property agreed to assume its liability. The liability totalled $1,242,435. Assuming this liability was most certainly a benefit to the taxpayer and constituted consideration for the transfer of the property. (*Newco Leasing, Inc.* v. *State Bd. of Equalization, supra,* 143 Cal.App.3d at p. 126.)

In additional support for its argument, the taxpayer cites specific provisions of the California Personal Income Tax Law pertaining to the tax-

---

[4]The taxpayer essentially makes this same argument in its discussion of *Davis Wire Corp.* v. *State Bd. of Equalization* (1976) 17 Cal.3d 761 [132 Cal.Rptr. 133, 553 P.2d 229] *Northrop Corp.* v. *State Bd. of Equalization* (1980) 110 Cal.App.3d 132 [167 Cal.Rptr. 707], and *Pac. Pipeline Const. Co.* v. *State Bd. of Equal.* (1958) 49 Cal.2d 729 [321 P.2d 729]. The appellant concludes the common dominator in these cases is the fact the seller in each case transferred the assets outright—the seller was disposing of assets for consideration. Yet this is exactly what happened in the case before us. The seller, appellant, disposed of its equipment. It transferred the property outright. Another entity, the partnership took title in the property. The fact the appellant was a copartner does not alter this basic reality.

ation of partners and partnerships.[5] Since the Sales and Use Tax Law is unique and distinct from the Personal Income Tax Law drawing upon the latter to illuminate the former may be inappropriate. (See *King* v. *State Bd. of Equalization* (1972) 22 Cal.App.3d 1006, 1010-1011 [99 Cal.Rptr. 802]; *Mercedes-Benz* v. *State Bd. of Equalization, supra,* 127 Cal.App.3d at p. 874.) Even if it were appropriate to examine this particular area of the law, it is unclear how this advances the taxpayer's argument. Section 17881, subdivision (a), provided: "No gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." Sales and Use Tax regulation 17881 provided however: ". . . Rather than contributing property to a partnership, a partner may sell property to the partnership or may retain the ownership of property and allow the partnership to use it. In all cases, the substance of the transaction will govern, rather than its form. See Reg. 17891(c)(3). *Thus, if the transfer of property by the partner to the partnership results in the receipt by the partner of money or other consideration . . ., the transaction will be treated as a sale or exchange under Sections 17864 to 17866, inclusive, rather than as a contribution under Section 17881 . . . .*" (Italics added.)

In the transaction at issue, the transfer of property resulted in the receipt by the appellant of consideration in the form of assumption of its indebtedness. Thus even under this regulation, it would appear such a transaction was treated as a sale. Section 17915 would likewise seem to have supported this position. It provided, in relevant part, ". . . any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such individual liabilities *shall be considered as a distribution of money to the partner by the partnership.*" (Italics added.)

We now turn to Sales and Use Tax regulation 1595, subdivision (b)(4). This regulation provides: "Tax does not apply to a transfer of property to a commencing corporation or commencing partnership in exchange solely for first issue stock of the commencing corporation or an interest in the commencing partnership. Tax does apply, however, if the transferor receives consideration such as cash, notes, or an assumption of indebtedness, and the transfer does not otherwise qualify for exemption. The tax is measured by the amount of such consideration attributable to the tangible personal property transferred."

---

[5]Effective July 28, 1983, section 17851 was enacted. This section provides: "The taxation of partners and partnerships shall be determined in accordance with Subchapter K of Chapter 1 of Subtitle A of the Internal Revenue Code . . . ." The former section 17851 was repealed. (Stats. 1983, ch. 488, § 60.) Sections 17881 and 17915, cited by the taxpayer and discussed in text, *infra,* were also thereby repealed. (Stats. 1983, ch. 488, § 58, immediately eff. July 28, 1983.) The Internal Revenue Code of 1954 sections 721 and 752, which supersede sections 17881 and 17915 respectively, contain identical language to the superseded sections however.

This regulation is directly applicable and specifically covers the taxpayer's transaction. The taxpayer contends, however, this regulation authorizes taxation of transactions that could not be so taxed under the relevant code sections. This simply is not the case. As discussed above, under the code, this transaction constituted a sale because it was the transfer of property for consideration. Taxation of this transaction was appropriate. This is not a situation, as the appellant argues, where regulation 1595, subdivision (b)(4) exceeds the parameters of the relevant code sections. Instead this is a case where the transaction fell within the statutory framework of the code and also fit squarely within the regulation.[6] The regulation in no way can be held arbitrary, capricious or without a reasonable or rational basis.

III. THE PROPER MEASURE OF THE CONSIDERATION RECEIVED BY THE APPELLANT WAS THE FULL AMOUNT OF THE DEBT ASSUMED BY THE PARTNERSHIP.

 Appellant contends even if a taxable sale occurred, only 50 percent of the assumed debt was subject to the sales tax calculation. The taxpayer argues taxation based on 100 percent of the assumed debt was improper since as a general partner, appellant remained jointly and severally liable for the indebtedness of the partnership. More importantly, the taxpayer urges, since presumably partnership assets were used to discharge this debt and half of these assets belonged to the appellant, the appellant was relieved from only one-half of the indebtedness.[7]

---

[6]Instead of exceeding the parameters of the relevant code sections, regulation 1595, subdivision (b)(4) arguably exempts from taxation transactions which could be taxed under the general statutory provisions. Other jurisdictions with similar provisions as the code have held the transfer of property to a commencing partnership or corporation in return for stock constitutes a taxable sale irrespective of any concurrent assumption of liability. (See *Christensen* v. *Skagit County* (1965) 66 Wn.2d 95 [401 P.2d 335, 337] [the transfer of ownership of real property from a partnership to a newly formed corporations in return for stock constituted a "sale." An excise tax computed at 1 percent of the value of the property was properly imposed]; *Frank Amodio Moving and Storage Co.* v. *Connelly* (1957) 144 Conn. 569 [135 A.2d 737, 738] [transfer of motor vehicles by an individual to a newly formed corporation in return for stock constituted a sale]; *Victory Express, Inc.* v. *Bowers* (1959) 169 Ohio St. 227 [8 Ohio Ops.2d 200, 158 N.E.2d 514, 515] [transfer of motor equipment to a newly formed corporation in which the appellant became sole shareholder constituted a taxable sale]; see also *Weaver* v. *King County* (1968) 73 Wn.2d 183 [437 P.2d 698, 702-704] (dis. opn.); *Hawthorn Mellody, Inc.* v. *Lindley* (1981) 65 Ohio St.2d 47 [19 Ohio Ops.3d 234, 417 N.E.2d 1257, 1262-1264].)

[7]A similar argument was raised in a different context. In *People* v. *Mellor* (1984) *ante,* page 32 [207 Cal.Rptr. 383], the defendant, who was the sole general partner in a limited partnership, was convicted of grand theft and the intentional taking of property valued in excess of $100,000. An additional term of two years had been imposed because the loss exceeded $100,000. As part of his challenge to his conviction, he argued since he had a 50 percent interest in the partnership funds, he could not have embezzled more than $75,000 (50 percent of the $150,000 investment in the partnership). The court rejected this argument. The additional two-year term stood.

To accept the taxpayer's argument, we would be forced to ignore the essential fact that a separate legal entity, the partnership, assumed the taxpayer's liability. For the reasons discussed earlier, we are not willing to do this. When the taxpayer transferred equipment to the partnership, the partnership assumed *all* the liability on the equipment. This basic reality cannot be disregarded. The taxpayer chose the partnership form of doing business presumably because of the advantages it offered. It is not appropriate for the appellant now to ask this court to ignore this fact so it will not suffer a disadvantage resulting from the very adoption of this business device. For these reasons, the proper measure of the consideration received by the taxpayer was the full amount of the debt assumed.

## Disposition

The trial court's grant of summary judgment for the respondent is affirmed.

Lillie, P. J., and Thompson, J., concurred.