[No. S031761. Dec. 20, 1993.]

BEATRICE COMPANY, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Timothy G. Laddish, Assistant Attorney General, Edmond B. Mamer and Clara L. Slifkin, Deputy Attorneys General, for Defendant and Appellant.

Morrison & Foerster, Charles J. Moll III, Peter B. Kanter, Horwood, Marcus & Braun, Fred O. Marcus and Peter J. Berman for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—Beatrice Company (Beatrice) asks this court to clarify whether an assumption of liabilities by a commencing subsidiary corporation in exchange for a transfer of tangible personal property by the parent corporation constitutes consideration for the transferred property which subjects the transaction to taxation under Revenue and Taxation Code sections 6051 and 6006, subdivision (a).[1]

We granted Beatrice's petition for review in order to resolve continuing uncertainty as to whether an assumption of liabilities constitutes consideration for a transfer of assets when the original obligor remains primarily

---

[1] Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

Section 6051 imposes a tax "for the privilege of selling tangible personal property at retail."

Section 6006, subdivision (a), defines a "sale" as: "[a]ny transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration."

liable. The uncertainty arises in part from an apparent conflict between the decisions in *Macrodyne Industries, Inc.* v. *State Bd. of Equalization* (1987) 192 Cal.App.3d 579 [237 Cal.Rptr. 537], and *Cal-Metal Corp.* v. *State Bd. of Equalization* (1984) 161 Cal.App.3d 759 [207 Cal.Rptr. 783].

We conclude that, although Beatrice remained primarily liable on debts and obligations assumed by its Standard Dry Wall Products, Inc., subsidiary (Standard Dry Wall), Standard Dry Wall's assumption of liability for those debts and obligations was consideration. For that reason the transaction was a retail sale subject to payment of sales tax. We shall, therefore, affirm the judgment of the Court of Appeal.

I

## The Corporate Transfer

Beatrice created Standard Dry Wall on October 28, 1983.[2] At the time of incorporation Standard Dry Wall issued 1,000 shares of stock to Beatrice, but it remained inactive until July 31, 1984, when Beatrice transferred all of the assets of its "Standard Dry Wall Products Division" (the division) to Standard Dry Wall. The transaction was not made pursuant to a written contract between Beatrice and Standard Dry Wall, but was reflected in a "Written Consent" of the Standard Dry Wall board of directors for the issuance and sale to Beatrice of 9,000 shares of Standard Dry Wall stock in exchange for "(1) substantially all of the assets of Beatrice's Standard Dry Wall Products Division (the Division) . . . ; and (11) the assumption by [Standard Dry Wall] of substantially all of the liabilities of the Division . . . ."

In the "Assumption Agreement," Standard Dry Wall assumed and agreed to "pay, perform and/or discharge in full, when and as the same become due, all of the debts, liabilities and obligations . . . of Beatrice's Standard Dry Wall Products Division, . . . of every kind, nature and description . . . ." Excepted from the assumed liabilities were any arising out of a contract which could not be assigned or transferred without consent or authorization until such consent or authorization was obtained, or a novation agreed to. With respect to any such obligations, Standard Dry Wall agreed to perform the obligations of the division on its behalf, or, if necessary, to supply Beatrice with the means by which to fulfill the obligation.

The State Board of Equalization (Board) concluded that the transaction was a taxable retail sale. After a hearing before the Board, Beatrice paid,

---

[2]At the time of incorporation, the subsidiary was named "BFoodsHolding Co. 8, Inc." The name was changed subsequently, and has since been changed again. It is now "Thoro System Products, Inc."

under protest, sales taxes of $14,040.68, interest of $9,994.13, and penalties of $1,404.07. It then filed a claim for refund, paid additional interest of $327.62, and, when its claim for refund was denied by the Board, initiated this action to recover the sums paid.

## II

### THE PROCEEDINGS BELOW

In its complaint, brought pursuant to section 6933, Beatrice acknowledged that it had transferred the assets and liabilities of the division to Standard Dry Wall, in exchange for Standard Dry Wall stock. Beatrice alleged, however, that while it had transferred the division's liabilities to Standard Dry Wall, Beatrice remained "principally and jointly liable" to its creditors for the transferred liabilities. We note these allegations because Beatrice claimed for the first time in a petition for rehearing in the Court of Appeal that it had not actually transferred all of the division's liabilities because no creditor consented to transfer or novation, and that it had continued to fund the liabilities.

Our review of the record confirms that while Beatrice has maintained throughout the proceedings that it remained primarily liable for the division's debts and obligations, it offered no evidence in the proceedings before the Board or in the trial court to substantiate the claim that it continued to fund the liabilities or perform the obligations of the division. Further, Beatrice never argued that the assumption agreement should be construed as excepting from the agreement the debts of the division. To the contrary, Beatrice's claim for refund expressly alleged that "in furtherance of its plan to reorganize and restructure its corporate operation, [Beatrice] transferred the assets and liabilities of its Standard Dry Wall Products Division (Standard Dry Wall Division) to Standard Dry Wall Products, Inc., a newly created wholly owned subsidiary (Standard Dry Wall), in exchange for the first issue stock of Standard Dry Wall and an assumption of Standard Dry Wall Division's liabilities. Although Standard Dry Wall assumed Standard Dry Wall Division's liabilities, Beatrice remained jointly liable for the assumed liabilities."[3]

---

[3]For the above reasons the Court of Appeal properly denied the petition for rehearing and Beatrice's request to offer evidence at the appellate level regarding these claims. Only grounds set out in a claim for refund may be the basis for a refund action filed pursuant to section 6932. (§ 6933; *Atari, Inc.* v. *State Board of Equalization* (1985) 170 Cal.App.3d 665, 672 [216 Cal.Rptr. 267].)

We also note that Beatrice's claim with regard to the effect of the clause excepting unassignable liabilities appears to be disingenuous in light of the subsequent provision of the

Both parties moved for summary judgment. Both agreed that Civil Code section 1605[4] defines "consideration" as that term is used in section 6006, and that Sales and Use Tax regulation, title 18, section 1595, subdivision (b)(4) (Cal. Code Regs., tit. 18, § 1595, subd. (b)(4)) (Regulation 1595(b)(4))[5] was applicable in determining whether the transaction was exempt from sales tax. Beatrice contended that the transfer of assets occurred as part of a corporate reorganization which by Regulation 1595(b)(4) was an exception to the general rule under which an exchange of personal property for stock is a taxable sale under section 6006, subdivision (a). Beatrice maintained that the assumption agreement was not consideration because Beatrice continued to be liable for the division's debts, and argued that *Macrodyne Industries, Inc.* v. *State Bd. of Equalization, supra,* 192 Cal.App.3d 579 (*Macrodyne*), controlled.[6]

The Board conceded that, notwithstanding the initial issuance of 1,000 shares of stock, Standard Dry Wall was a commencing corporation, but argued that the assumption agreement was consideration notwithstanding Beatrice's continuing contractual liability to the division's creditors. The Board argued that *Cal-Metal Corp.* v. *State Bd. of Equalization, supra,* 161 Cal.App.3d 759 (*Cal-Metal*), not *Macrodyne,* controlled.

agreement whereby Standard Dry Wall agreed to furnish Beatrice with anything necessary to carry out its obligations under any unassignable contract. Assuming, therefore, that the excepted contracts included debts, Standard Dry Wall agreed to fund any it did not pay itself. If the liabilities were unfilled contracts to produce or supply dry wall, Standard Dry Wall agreed to supply or produce it or to provide Beatrice with the means of doing so.

[4] Civil Code section 1605: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

[5] Regulation 1595(b)(4): "Tax does not apply to a transfer of property to a commencing corporation or commencing partnership in exchange solely for first issue stock of the commencing corporation or an interest in the commencing partnership. Tax does apply, however, if the transferor receives consideration such as cash, notes, or an assumption of indebtedness and the transfer does not otherwise qualify for exemption. The tax is measured by the amount of such consideration attributable to the tangible personal property transferred."

[6] Beatrice argues in this court that there was confusion below, both on its part and on the part of the Board, as to whether Standard Dry Wall was a commencing corporation to which Regulation 1595(b)(4) applied. It claims now that Standard Dry Wall was an existing corporation and the regulation is irrelevant.

Nonetheless, in its claim to the Board, Beatrice argued that Regulation 1595(b)(4) applied. It repeated that claim in its complaint, where it alleged: "Beatrice's transfer of assets of its Standard Dry Wall Division to its newly formed, wholly owned subsidiary, Standard Dry Wall, was exempt from sales tax under Sales Tax Regulation 1595(b)(4)." That claim was reasserted in the motion for summary judgment: "The corporate reorganization herein also is exempt under Regulation 1595(b)(4)."

The trial court concluded that there was no material issue of fact in dispute (Code Civ. Proc., § 437c) and granted summary judgment for Beatrice. In so doing the court found, inter alia, that Beatrice had transferred all the division's assets and liabilities "in the nature of accounts payable" to Standard Dry Wall in exchange for the 9,000 shares of Standard Dry Wall stock, but that Beatrice remained principally and jointly liable to its creditors on the transferred liabilities as none of the creditors agreed to substitution of the subsidiary as the party liable for the debts.

The Court of Appeal reversed the judgment, reaffirming its *Cal-Metal* holding that a transfer of tangible personal property to a transferee that agrees to assume the transferor's liability is a taxable transfer under Regulation 1595(b)(4). The Court of Appeal rejected the conclusion of the *Macrodyne* court, which had reasoned that, because a transferor corporation remained jointly liable for liabilities assumed by a transferee subsidiary, no benefit had been conferred on the transferor in the transfer, and, absent consideration, there was no taxable sale. That analysis, the Court of Appeal concluded, erred in focussing only on benefit while overlooking the prejudice to the transferee corporation.

III

DISCUSSION

Although the question of consideration for a transfer of assets arises here in the context of identifying a taxable sale, the issue is, as the Court of Appeal recognized, as much one of contract law as it is of tax law. Moreover, the existence of consideration is not resolved solely by examining Beatrice's liability under contracts with its creditors and other obligees, but requires that the Board and ultimately the court consider Beatrice's rights under its agreement with Standard Dry Wall to transfer the division's assets and liabilities to Standard Dry Wall in exchange for shares of Standard Dry Wall stock. It is that agreement, not the preexisting Beatrice contracts, which is determinative.

The question arises because the state has imposed a tax on "the privilege of selling tangible personal property at retail." (§ 6051.) A transaction is a sale within the meaning of section 6051 whenever there is a "transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration." (§ 6006, subd. (a).)

Although a transfer of property in exchange for stock would otherwise be a taxable sale under this definition, Regulation 1595(b)(4) creates an exemption for transfers to newly formed corporations: "Contribution to Commencing Corporation or Commencing Partnership. Tax does not apply to a

transfer of property to a commencing corporation or commencing partnership in exchange solely for first issue stock of the commencing corporation or an interest in the commencing partnership. *Tax does apply, however, if the transferor receives consideration such as* cash, notes, or *an assumption of indebtedness*, and the transfer does not otherwise qualify for exemption. The tax is measured by the amount of such consideration attributable to the tangible personal property transferred." (Italics added.)

Although the subsidiary which became Standard Dry Wall had been formed several months before the transfer to it of the division's assets and an initial issuance of stock made, the Board extended the potential benefit of the regulation to Beatrice because the subsidiary had been inactive in the interim. ■ Notwithstanding the potential benefit of the exemption, however, it is the rule that exemptions are construed liberally in favor of the taxing authority and strictly against the taxpayer. (*Standard Oil Co.* v. *State Bd. of Equalization* (1974) 39 Cal.App.3d 765, 769 [114 Cal.Rptr. 571].) Moreover, "[f]or the purpose of the proper administration of this part [relating to sales and use taxes] and to prevent evasion of the sales tax it shall be presumed that all gross receipts are subject to the tax until the contrary is established. The burden of proving that a sale of tangible personal property is not a sale at retail is upon the person who makes the sale . . . ." (§ 6091.)

Beatrice argues, as it did below, that nothing of value was transferred to it by Standard Dry Wall. It also asserts that it did not transfer the assets of the division in exchange for Standard Dry Wall's agreement to pay the liabilities. Beatrice has, however, consistently acknowledged that it transferred the assets *and liabilities* of the division in exchange for stock, and that Standard Dry Wall's assumption of liabilities was part of this transaction. The reality, notwithstanding the artful description of the transaction, is that Standard Dry Wall acquired the assets of the division at a cost to it of the stock and the assumption of liabilities. Beatrice has never denied that the assumption agreement is enforceable or that it is the party to which Standard Dry Wall owed performance under the agreement.

A. *Consideration.*

1. *Parent/Subsidiary Relationship.*

■ Beatrice suggests that Standard Dry Wall was responsible for the liabilities of the division because Beatrice, as the sole shareholder of Standard Dry Wall at the time of the transaction, had the power to cause Standard Dry Wall to carry out its duties under the agreement at any time without

recourse to judicial proceedings to enforce performance. On that basis it claims that Standard Dry Wall had a preexisting duty to perform the division's obligations and, therefore, the agreement was not additional consideration. That claim is inconsistent both with Beatrice's admission that absent the assumption agreement no legally enforceable duty existed, and with the reality that, wholly owned or not, Standard Dry Wall is a separate corporate entity. The legal duty to assume the division's debts and obligations arose solely from the assumption agreement.

Moreover, we do not accept Beatrice's arguments that because a parent corporation can compel a subsidiary to pay debts and because statutory liability may exist for obligations related to transferred assets, a transfer is exempt from the sales tax. Were we to accept the former proposition, we would have to assume that the Legislature intended to exempt from the sales tax any sale of assets by a parent corporation to a subsidiary where the consideration is an agreement to pay the balance due on an indebtedness of the transferor corporation, or where the consideration is a promise by the transferee corporation to pay for the assets in the future. In both cases, the parent, by exercising its control over the subsidiary, could compel the subsidiary to pay even in the absence of the agreement. No authority is cited for the startling assertion that these sales are not among the sales the Legislature intended to be subject to the sales tax.[7] The two corporations are separate legal entities, regardless of their parent/subsidiary relationship, for purposes of the sales tax law. Their intercorporate transactions are subject to the same rules that apply to all taxpayers unless a statutory or regulatory exception is applicable. None applies here.

Beatrice did, therefore, receive both the stock of Standard Dry Wall and the benefit of a legally enforceable assumption agreement when it transferred the division assets to Standard Dry Wall. If that agreement is consideration within the meaning of section 6006 and Civil Code section 1605, a taxable sale occurred.

### 2. *Corporate Reorganization.*

■ There is no support in the relevant statutes and regulations for Beatrice's alternative argument that the transfer of assets was not a taxable

---

[7]We note, moreover, that the argument that a parent can exercise its control over a subsidiary to compel it to pay these obligations assumes that the subsidiary will remain such until the obligations are satisfied. The Board need not assume that the parent will continue to hold the controlling shares in a subsidiary. Absent a statutory exemption for transfers between parent and subsidiary corporations, therefore, the transaction must be treated as one between separate entities.

Because California statutes and regulations are applicable here, we do not find persuasive the out-of-state authorities relied on by Beatrice for its argument that the separate identities of the parent and subsidiary corporations are irrelevant.

sale because it was undertaken as part of a corporate reorganization. Assuming its truth, that fact is irrelevant in determining whether sales tax is due on the transfer of the assets to Standard Dry Wall. Standard Dry Wall is a separate corporate entity, as the *Macrodyne* court recognized: "Where the corporation and its subsidiary behave as separate entities the transfers between them which comply with the statutory definition of a sale are subject to sales tax. [Citations.] Whether a parent and subsidiary should be treated as a single entity depends on, among other things, whether distinct corporate identities have been maintained and whether the corporations have independent business purposes." (*Macrodyne, supra,* 192 Cal.App.3d 579, 582. See also *Cal-Metal, supra,* 161 Cal.App.3d 759, 766; *Mercedes-Benz* v. *State Bd. of Equalization* (1982) 127 Cal.App.3d 871, 874 [179 Cal.Rptr. 758].) The record does not reflect any claim by Beatrice or evidence offered by Beatrice to refute the assumption that Standard Dry Wall operates as a separate corporation.

Moreover, the law does not assume that a corporation which "spins off" a division into a separate corporation intends to retain ownership of the subsidiary. Whether the transaction is subject to sales tax is determined at the time of the transfer and is not affected by the parent corporation's subsequent conduct toward the subsidiary. The newly formed corporation is treated as a separate entity and a transfer of assets to it for consideration is a taxable sale regardless of the identity of the shareholders.

3. *Preexisting Duty Imposed by Law.*

Beatrice also argues that Standard Dry Wall was obligated by law to assume the division's liabilities under this court's holding in *Ray* v. *Alad Corp.* (1977) 19 Cal.3d 22 [136 Cal.Rptr. 574, 560 P.2d 3]. This argument also fails. This proposition relies on an expansive and untenable reading of this court's holding in *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22. That decision arose out of a personal injury action brought on a theory of strict liability for a defective product by a plaintiff injured in a fall from an allegedly defective ladder. The corporate manufacturer of the ladder had been dissolved more than six months prior to the accident. The defendant corporation had acquired the assets of the manufacturer and continued to produce the line of products of the defunct manufacturer. There was no outward indication that a change of ownership had occurred, and the defendant corporation held itself out as the same enterprise.

We held that in those circumstances, where the injured plaintiff had no recourse against the actual manufacturer, tort liability existed. We expressly limited the holding to tort liability, and emphasized that this was an exception to the general rule that liability with respect to contractual obligations

exists only if the liabilities are expressly assumed: "Apart from tort liability for defective products, the hereinafter discussed rules of law applicable to [the defendant's] acquisition of this manufacturing business imposed no liability upon it for [the ladder manufacturer's] obligations other than certain contractual liabilities that were expressly assumed. . . . [T]he instant claim of strict tort liability presents an exception to the general rule against imposition upon a successor corporation of its predecessor's liabilities . . . ." (*Ray* v. *Alad Corp.*, *supra*, 19 Cal.3d 22, 25.)

We also stated the rule generally applicable: "As typically formulated the rule states that the purchaser [of corporate assets] does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray* v. *Alad Corp.*, *supra*, 19 Cal.3d 22, 28.)

Here of course there is no merger or consolidation, but the opposite, and Standard Dry Wall is not a continuation of Beatrice. Beatrice continues to exist. ". . . California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." (*Ray* v. *Alad Corp.*, *supra*, 19 Cal.3d 22, 29.)

Beatrice may not rely on a suggestion that because the second element is present here, Standard Dry Wall was liable for the liabilities covered by the assumption agreement. ▮ As the authorities cited in support of this statement confirm, even when the same persons are officers or directors of the two corporations, liability is not imposed on the acquiring corporation when recourse to the debtor corporation is available and the two corporations have separate identities.

Thus, in *Stanford Hotel Co.* v. *M. Schwind Co.* (1919) 180 Cal. 348, 354 [181 P. 780], we stated the established rule that because the new corporation is simply a continuation of the old, liability is imposed "where a corporation reorganizes under a new name but with practically the same stockholders and directors and continues to carry on the same business . . . ." *Higgins* v. *Cal. Petroleum etc. Co.* (1898) 122 Cal. 373 [55 P. 155], and *Blank* v.

*Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456 [67 P.2d 376], are to the same effect. *Economy Refining & Service Co.* v. *Royal Nat. Bank of New York* (1971) 20 Cal.App.3d 434 [97 Cal.Rptr. 706, 49 A.L.R.3d 872] recognized liability when a transfer of assets was a fraud on creditors, and *Malone* v. *Red Top Cab Co.* (1936) 16 Cal.App.2d 268 [60 P.2d 543], in which there had been a merger or consolidation, recognized statutory liability in tort when all of the assets of responsible corporation passed to the defendant corporation without adequate consideration or provision for creditors' claims.

■ Neither *Ray* v. *Alad Corp., supra,* 19 Cal.3d 22, nor the cases on which it relies for its statement of the above rules support an argument that Standard Dry Wall was otherwise obligated to satisfy the Beatrice liabilities which Standard Dry Wall assumed in the assumption agreement. The liabilities in issue here are contractual, not tort liabilities, and any obligees continue to have recourse against Beatrice. Beatrice does not suggest that the transfer of assets was a fraud on creditors or that it lacked sufficient resources after the transfer of assets to meet the claims of its creditors.

B. *Joint Liability of Principal Obligor and Transferee of Liabilities.*

■ Beatrice also argues that Standard Dry Wall's assumption of the division's liabilities was not consideration because Beatrice remained primarily and "jointly" liable for the debts and obligations of the division. We disagree, and disapprove *Macrodyne, supra,* 192 Cal.App.3d 579, on which Beatrice relies for this argument.

Whether the continuing, primary liability of a transferor of debts and other obligations precludes finding consideration in an agreement by the transferee to assume those debts and obligations has been the object of a series of Court of Appeal decisions considering the sales tax impact of such transactions. Those decisions have created uncertainty as to whether a taxable sale exists when the assumption agreement is consideration for a transfer of assets.

The first in time of the assumption of liabilities cases is *Newco Leasing, Inc.* v. *State Bd. of Equalization* (1983) 143 Cal.App.3d 120 [191 Cal.Rptr. 588]. There, the taxpayers, whose businesses leased motor vehicles to the public, purchased outstanding vehicle leases from third parties. In so doing, they assumed the sellers' obligations to the financing institutions. The Court of Appeal rejected the taxpayers' argument that they had simply purchased the leases, not the equipment, and held that the equipment had been purchased for consideration: "Their assumption of the liability owed by the respective sellers constituted the consideration given for the transfers. It is

the value of that consideration which is the measure of the sales price and the ultimate tax liability." (*Id.*, at p. 126.)

*Cal-Metal* followed and, like *Newco Leasing, Inc.* v. *State Bd. of Equalization, supra*, 143 Cal.App.3d 120, held that an assumption of liabilities is consideration. Cal-Metal, a corporation, entered into a partnership with Millsteel Company, and pursuant to the partnership agreement transferred equipment to the commencing partnership. The partnership agreed to assume the liabilities on the transferred equipment. The Board assessed a sales tax on the net value of the equipment. Cal-Metal paid the tax and sought a refund. The trial court granted summary judgment for the Board, and the Court of Appeal affirmed. The court recognized that the partnership was a separate legal entity to which all interest in the equipment had been transferred. (*Cal-Metal, supra*, 161 Cal.App.3d 759, 765.)

The court then held that the assumption of liabilities was consideration. "Assuming this liability was most certainly a benefit to the taxpayer and constituted consideration for the transfer of the property." (*Cal-Metal, supra*, 161 Cal.App.3d at p. 766.) That Cal-Metal remained jointly and severally liable did not affect that consideration, and neither that fact nor that Cal-Metal, as a partner, had an interest in the funds used to satisfy the debts, was a basis for calculating the amount of consideration at less than the amount of the assumed liabilities. "To accept the taxpayer's argument, we would be forced to ignore the essential fact that a separate legal entity, the partnership, assumed the taxpayer's liability. . . . When the taxpayer transferred equipment to the partnership, the partnership assumed *all* the liability on the equipment. This basic reality cannot be disregarded. The taxpayer chose the partnership form of doing business presumably because of the advantages it offered. It is not appropriate for the appellant now to ask this court to ignore this fact so it will not suffer a disadvantage resulting from the very adoption of this business device. For these reasons, the proper measure of the consideration received by the taxpayer was the full amount of the debt assumed." (*Id.*, at p. 769, original italics.)

Beatrice relies for its argument that consideration is not present on *Macrodyne*, the next case. Macrodyne was a manufacturer of parts used in the aerospace and aircraft industry. Each of its four divisions operated independently. In 1976, the corporation arranged to transfer three of the divisions to preexisting, wholly owned, subsidiary corporations pursuant to agreements whereby the assets and liabilities of the divisions were to be transferred to the subsidiaries. The subsidiaries assumed the liabilities, but Macrodyne remained jointly liable for them.

The trial court ruled that Macrodyne was entitled to a refund of the tax. The Court of Appeal affirmed. The court recognized that the subsidiaries and

Macrodyne were separate entities, and found no relevance in Macrodyne's suggestion that no sale occurred because the transfer occurred pursuant to a corporate reorganization. "When the choice is made to conduct business through corporate entities, parties assume both the privilege and the burdens of that decision. . . . [T]he nature of the parties involved in the transactions does not prevent the imposition of a sales tax . . . ." (*Macrodyne, supra,* 192 Cal.App.3d 579, 582.)

The Court of Appeal then turned to the transaction itself, and unlike the *Cal-Metal* court, the *Macrodyne* court found significance in the taxpayer's continued joint liability for the transferred liabilities. It reasoned: "Since the transfer of the divisions to the subsidiaries had no effect on the liability of Macrodyne, no benefit was conferred upon Macrodyne by the transfer. There being no consideration, there could be no sale. Where there is no sale, no sales tax may be imposed." (*Macrodyne, supra,* 192 Cal.App.3d 579, 583.)

*Cal-Metal, supra,* 161 Cal.App.3d 759, was distinguished on the ground that the transferee had been a commencing partnership rather than a preexisting separate entity. That distinction, the court reasoned, made Regulation 1595(b) applicable in *Cal-Metal.* The court did not explain why a transfer to an existing entity, which is usually the case when a sale occurs, would not be subject to sales tax under sections 6006, subdivision (a), and 6051, and did not consider the reasoning which underlay the *Cal-Metal* court's conclusion that an assumption of liabilities is "most certainly a benefit" to the transferor and thus is consideration.

More recently, the Court of Appeal followed *Cal-Metal* in *Industrial Asphalt, Inc.* v. *State Bd. of Equalization* (1992) 5 Cal.App.4th 1237 [7 Cal.Rptr.2d 444]. As in *Cal-Metal,* the taxpayer, Industrial Asphalt, Inc., transferred assets to a partnership it had formed with a third party, Huntmix. Industrial Asphalt, Inc., and Huntmix received cash for the assets each contributed, and the partnership assumed liabilities of both corporations. As in *Cal-Metal,* the transferor corporations remained liable also. The Court of Appeal held that the assumption of liabilities by the partnership was, nonetheless, consideration: "Assumption of liabilities is a 'consideration' (*Newco Leasing, Inc.* v. *State Bd. of Equalization* (1983) 143 Cal.App.3d 120, 126 [191 Cal.Rptr. 588]); this is so even where the transferring party remains liable on the indebtedness. (Corp. Code, § 15015.)" (5 Cal.App.4th 1237, 1240.)

Therefore, the court reasoned the taxpayer could not claim the exemption from sales tax created by Regulation 1595(b)(4) for a transfer to a commencing partnership "solely" for an interest in the partnership. *Macrodyne, supra,* 192 Cal.App.3d 579, was distinguished on the ground that the transfer of assets in that case was to an existing partnership and the court there had not

sought to construe that regulation. With respect to the consideration issue, the court stated: "*Macrodyne* concluded the parent company received no consideration for it was, in effect, transferring the liabilities from one pocket to another. In *Cal-Metal*, and our case, the transfer is to a third pair of pants worn by a third person and thus lightens the load of the pockets of both Industrial and Huntmix. This is so even if the third parties' pockets fail to hold the debts (by failing to pay them) and the debts are effectively returned to the solid pockets of the partners. The partners would have received a consideration, a benefit, at the time of transfer of title though ultimately the consideration failed of value. The benefit received was that [the partnership] became the primary obligor on the liabilities at the time of the transfer of title; hence the tax applied." (*Industrial Asphalt, Inc.* v. *State Bd. of Equalization*, *supra*, 5 Cal.App.4th 1237, 1240. [*Industrial Asphalt*].)

The effort to distinguish *Macrodyne* has added unnecessary complexity to the law. Whether the transaction is subject to tax turns on whether there was consideration for the transfer of assets, not on the nature or relationship of the transferor and transferee. Regulation 1595(b)(4) creates an exemption only if there is no consideration other than the initial issue of stock or interest in the commencing partnership. The question of consideration must be decided independently of the regulation. The tax applies if there is consideration and no other exemption applies. Thus consideration was at the heart of each case. The *Macrodyne* attempt to distinguish *Cal-Metal*, and the subsequent attempt of the *Industrial Asphalt* court to distinguish *Macrodyne* rather than simply express disagreement, have added confusion to what is actually a rather simple conflict over the nature of consideration.[8] That is, as we suggested above, more a matter of contract law than tax law.

An agreement to assume liabilities is a contractual promise to perform the obligations of another. If supported by consideration, it is enforceable notwithstanding the continuing primary liability of the promisee for the same

[8]Beatrice argues that, because the Board is collaterally estopped by the decision, Beatrice may also rely on an *unpublished* Court of Appeal decision which held that an assumption of liabilities by two new corporations to which a parent had transferred all assets of two divisions was not consideration. The Court of Appeal properly rejected that argument under the authority of section 7176.

California Rules of Court, rule 977(b), permits citation of and reliance on an unpublished Court of Appeal opinion "when the opinion is relevant under the doctrines of law of the case, res judicata, or collateral estoppel; . . ." Section 7176 provides, however: "In the determination of any case arising under this part the rule of res judicata is applicable only if the liability involved is for the same quarterly period as was involved in another case previously determined." The legislative limit on the invocation of res judicata, a doctrine which would be applicable only if Beatrice had been a party to the prior litigation, quite obviously extends to invocation of collateral estoppel. The Legislature cannot have intended that a nonparty be able to invoke the authority of a decision on which a party itself may not rely.

obligation. It is a benefit to the promisee because the promisee may compel the promisor to perform, or, if the promisor does not do so, recover damages from the promisor in the amount or value of the obligations it is compelled to satisfy as the primary obligor. This right to compel another to fulfill the promisee's obligations arises from the assumption agreement. That agreement therefore has value equal to the cost to the promisee of paying its debts or fulfilling its obligations. That value constitutes consideration within the meaning of section 6006 and Civil Code section 1605.

Moreover, it is not necessary in this state that there be both a benefit to the transferor and a detriment to the transferee for consideration to be found. It is sufficient under Civil Code section 1605 that the transferee of assets suffer prejudice or agree to do so. (*Raedeke* v. *Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 673-674 [111 Cal.Rptr. 693, 517 P.2d 1157].) The *Macrodyne* court failed to recognize that the detriment to the party who agrees to assume the obligations of another alone may constitute consideration for the transfer of assets.

We agree, therefore, with the holding in *Cal-Metal* and that in *Industrial Asphalt*. The assumption of liabilities by Standard Dry Wall constitutes consideration for the transfer of assets from Beatrice. To the extent that it is inconsistent with this holding, *Macrodyne* is disapproved.[9]

## IV

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Arabian, J., and George, J., concurred.

---

[9]Beatrice's argument that the existence of a statutory duty to assume the obligation of another would preclude finding consideration, also fails. If Standard Dry Wall had an *existing obligation* to satisfy the division's liabilities for reasons *independent of the transfer of assets*, a promise to assume the liabilities of Beatrice would not constitute consideration. A promise to do what one is already obligated to do is not consideration. (See 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 663 & 667, pp. 602 & 605, and cases cited.)

However, if a transferee is required by law to assume liabilities of the transferor related to those assets, the assumption of liabilities is no less consideration than it would be had the assumption been by agreement of the parties since there is no preexisting obligation to assume the liabilities.